Zelma Ray **ENGLE** and Shirley H. Engle, Plaintiffs,

v.

A. C. **ELLIS CORPORATION** et al.

Civ. A. No. H–77–629.

United States District Court, S. D. Texas, Houston Division.

Oct. 1, 1980.

Michael L. Atkinson, Houston, Tex., for plaintiffs.

James B. Warren, Houston, Tex., for defendant A. C. Ellis Corp. and intervenor Fidelity and Casualty Co.

Ervin A. Apffel, Jr., Galveston, Tex., for defendant Martin & Martin Foundation Drilling Contractors.

Gus A. Schill, Jr. and Robert H. Etnyre, Jr., Houston, Tex., for defendant Farmer Foundation Co.

## MEMORANDUM AND OPINION

HANNAY, District Judge.

### I.

The action is in maritime tort for personal injuries and for loss of consortium by the spouse. The Plaintiff, Zelma Ray Engle, was totally and permanently injured in Galveston Harbor on December 3, 1975 while working as a foreman for the Defendant A. C. Ellis Corporation on a pile driving barge. A. C. Ellis Corporation was under contract with Galveston Wharves to perform repairs and modifications to Piers 37 and 38, and to construct a new warehouse on them, at the Port of Galveston.

Prior to the commencement of work on the job, A. C. Ellis contracted with the Defendant Martin and Martin Foundation Drilling Contractors whereby Martin and Martin agreed to furnish certain valuable equipment for the purposes of the Pier 37 and 38 job. This valuable equipment consisted mainly of a Model LS–318 Link Belt Crawler Crane and a large Vibro hammer. As a precondition to its participation, Martin and Martin insisted on providing one of their operators, Archie Duncan, to make certain that their valuable equipment would be protected. Archie Duncan's operation of this crane produced the injury in question and about which more later.

It is clear from the record that Martin and Martin was the subcontractor of A. C. Ellis on this job. As subcontractor, Martin and Martin had control over its said equipment and its operator, Archie Duncan. Archie Duncan was the sole member of the Martin and Martin crew directly on that job.

The Defendant Farmer Foundation Company provided the floating barge that was

used on the project. It is clear from the record that A. C. Ellis and Martin and Martin were forced to engage Farmer Foundation in order to secure proper insurance coverage for work on navigable water. The floating barge provided by Farmer Foundation was 100 feet long and 50 feet wide. It was freely floating at all times material herein and its only connection to the land was the work it did or was to do on it. After the barge was brought to Galveston, Texas, the crane furnished by Martin and Martin was attached to it.

## II.

At the time of the accident the crew was shifting the barge inside the slip at Pier 38. As foreman for A. C. Ellis, Plaintiff was watching the distance between the moving barge and the tie rods sticking out from shore. This was to protect the barge from damage. The crane operator, Archie Duncan, was in the process of dropping the clamshell bucket of the crane to the ground on the pier, where it served as an anchor. This was attended by the use of a drag winch with a cable that ran directly from the winch down to the clamshell bucket. This enabled the barge to be pulled along the dock in the desired direction.

At this time, the boom of the crane was directed toward the bank at an angle of about 40 to 45 degrees left of the fore and aft center line of the barge. The crane operator had been heaving in on the drag cable so that the barge was moving slowly forward in a southerly direction along the face of the dock. As the barge moved, the crane operator, Archie Duncan, allowed the cable to become excessively slack thus forcing the drag cable to rest on the barge deck. Then, the Plaintiff gave a hand signal to the crane operator to desist. The Plaintiff then started forward to give instructions to his crew. As he approached the crane, walking beneath the boom, the cable snapped. It hit him in the forehead and knocked him to the deck thus causing his injuries.

## III.

As sole operator of the crane, it was Archie Duncan's responsibility to keep slack out of the cable while the barge was moving along the face of the dock. It was his responsibility to make sure that he did not operate the crane in a manner likely to cause injury to the members of the pile driving crew. The record discloses that Archie Duncan made the decision to move the barge through the use of the third line or drag line rather than by the two lines that ran over the boom. Archie Duncan testified to the fact that this was his decision and his alone. This was unsafe and negligent.

Archie Duncan testified that he was not looking at Plaintiff at the time of the accident and that he did not see Plaintiff walking under the boom of the crane toward the stern of the barge.

The Court finds that Archie Duncan failed to keep a proper look out while operating the crane. He should have kept his attention directed towards Plaintiff who was serving as flagman on the barge. This failure to keep a proper lookout, coupled with the unsafe use of the dragline, constituted negligence that was the proximate cause of the accident and Plaintiff's injury. I so find and hold. Mr. Justice Cardozo observed: "The presence of a known danger, attendant upon a known use, makes vigilance a duty."

Plaintiff testified that when he started aft toward the stern of the barge the drag winch was stopped. This is supported by the record. The record further demonstrates that Plaintiff was justified in not walking behind the crane because of impedimenta in the form of considerable other equipment. Plaintiff was not contributorily negligent in walking under the boom of the crane at the time as he had the right to expect the crane operator not to let the drag line become slack or to snap it taut in case it did. The Court so finds and holds. The Court finds and holds that the Plaintiff, Mr. Engle, was not negligent in any way that caused or contributed to his injury.

## IV.

It is clear from the record that Archie Duncan, from the day that he arrived at the job site, directed the unloading of the crane. He further directed other employees of Martin and Martin who were working primarily on an adjacent job as sub-contractors. As indicated, the equipment belonging to Martin and Martin was very valuable. The crane was worth $140,000.00 and the vibro hammer $130,000.00. The record is clear that they were protected and operated by the Martin and Martin employee, Archie Duncan, at all times on this job.

Testimony from A. C. Ellis employees disclosed that not only did Archie Duncan completely control the operation of the crane and Vibro hammer but attempted to control A. C. Ellis employees also. A request was directed to Martin and Martin by an A. C. Ellis operative to the effect that Archie Duncan be terminated. This request fell upon deaf ears. It is clear from this that A. C. Ellis had no control over Martin and Martin's employee, Archie Duncan.

Plaintiff and Archie Duncan understood on the job site that the operator and the crane belonged to Martin and Martin and that the crane operator had control over the use of the crane. Plaintiff would only inform Archie Duncan where the barge needed to be moved and Archie Duncan would make the decision how he would maneuver the crane, what lines he would pull on; and how he would operate the crane for the purpose of assisting in the movement of the barge.

I find and hold that Archie Duncan was in the general employ of Martin and Martin at the time of the accident herein and that at no time was he the "borrowed servant" of A. C. Ellis. Martin and Martin had the exclusive right to control Archie Duncan in the operation of the crane. Martin and Martin had total control over its employee Archie Duncan at all times material herein and in no way and in no respect released or relinquished that control to A. C. Ellis or to anyone else. A. C. Ellis did not at any time control Archie Duncan nor did it at any time attempt to exercise control over Archie Duncan.

I find and hold that Archie Duncan's negligent operation of the crane herein was a proximate cause of Plaintiff's injury and that hereby Martin and Martin breached its warranty of workmanlike performance to Plaintiff for which it must respond in damages.

## V.

I find and hold that the barge on which Plaintiff was working at the time of the accident was a vessel, special service in character, and that Plaintiff had a more or less permanent attachment to that vessel. It is clear from the record that Plaintiff performed all or a substantial part of his work aboard the vessel. His work contributed to the function of the vessel and the accomplishment of its mission. I find and hold that Plaintiff was a seaman on board, and a member of the crew, of that vessel at times material herein. *Offshore Co. v. Robison*, 266 F.2d 769, 774 (5th Cir. 1959); *Noble Drilling Corporation v. Smith*, 412 F.2d 952, 956–7 (5th Cir. 1969); *Kimble v. Noble Drilling Corporation*, 416 F.2d 847, 849 (5th Cir. 1969); *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 326–28 (5th Cir. 1977); and *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1345 (5th Cir. 1980).

## VI.

Martin and Martin has offered into evidence an equipment rental agreement to which it and Farmer Foundation were parties. This rental agreement has been admitted into evidence. The reverse side of this rental agreement contains, most importantly, a hold harmless agreement. But the Vice President of Martin and Martin, Mr. Jordan, and Mr. Farmer himself, testified that there was no intent on the part of Farmer Foundation to hold Martin and Martin harmless for its own negligence. The testimony of record reveals that *prior* to the execution of the rental agreement there was no discussion regarding a hold harmless arrangement between the parties.

It was held in *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 692 (5 Cir.), cert. den. 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970) that for the indemnitor to hold the indemnitee harmless for the later party's own negligence there must be a specifically stated intent to do so within the framework of the contract. There is no such thing in this case. Additionally, under Texas law, the indemnity provision in the crane rental agreement cannot form the basis for a valid cross-claim on the part of Martin and Martin for indemnity from Farmer Foundation because the indemnity provision is so general that it is invalid. *Joe Adams and Son v. McCann Construction Co.*, 475 S.W.2d 721, 723 (Tex.1971). Nor does the crane rental agreement give fair notice, nor is it sufficiently conspicuous, to provide indemnification under Texas law. *K and S Oil Service, Inc. v. Cabot Corp., Inc.*, 491 S.W.2d 733 (Tex.Civ.App., Corpus Christi, 1973, writ ref'd n. r. e.). The intent of the parties must be abundantly clear in order for a hold harmless provision to absolve a party from the consequences of his own negligence. Such an intent is not shown here; nor was there a meeting of the minds between the parties to that effect on that issue. As previously indicated herein, the essential contractual purpose for the inclusion of Farmer Foundation in the project was the need to secure through it the protection of marine insurance.

I find and hold that the hold harmless provision in the crane rental agreement does not, in the facts and circumstances of this case, absolve Martin and Martin from the consequences of its own negligence. Nor did the crane rental agreement in any way delegate to A. C. Ellis a right of control over Archie Duncan as A. C. Ellis was in no way a party to that agreement.

### VII.

Only one medical expert, Dr. Alexander Gol, testified in this case. His expert testimony is undisputed that the Plaintiff Zelma Ray Engle is totally and permanently disabled as a result of the accident which is the basis of this suit.

I find and hold that the amount of Six Hundred Thousand Dollars ($600,000.00) would fairly and reasonably compensate the Plaintiff Zelma Ray Engle for the injuries he sustained in the accident which is the basis of this suit. For these damages, Martin and Martin is solely liable.

■ The United States Supreme Court has now recognized the compensable right to loss of consortium in a maritime case. *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). But another and here dispositive question exists as to whether *Alvez* has retroactive application. The Supreme Court of Texas, in *Whittlesey v. Miller*, 572 S.W.2d 665 (1978), has now recognized the right to loss of consortium. But in that same case the Court denied the ruling retroactive application and determined that

".... this holding shall be applicable only in the present case and those actions arising after the effective date of this decision." 572 S.W.2d 669.

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court of the United States has addressed and decided the issue of retroactivity in civil cases. 404 U.S. at 105–107, 92 S.Ct. at 354–355. In *Huson*, the United States Supreme Court stated, at 106–107, 92 S.Ct. at 355.

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e. g., *Hanover Shoe v. United Shoe Machinery Corp.*, supra [392 U.S. 481], at 496 [88 S.Ct. 2224, at 2233, 20 L.Ed.2d 1231], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see e. g., *Allen v. State Board of Elections*, supra [393 U.S. 544], at 572 [89 S.Ct. 817 at 835, 22 L.Ed.2d 1]. Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior histo-

ry of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker, supra* [381 U.S. 618], at 629 [85 S.Ct. 1731, at 1738, 14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for 'where a decision of this Court could produce substantial inequitable results if applied retroactively there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity.' *Cipriano v. City of Houma*, supra [395 U.S. 701], at 706 [89 S.Ct. 1897, at 1900, 23 L.Ed.2d 647]."

■ The injury made the basis of this suit occurred on December 3, 1975. The suit was instituted in 1977. *Alvez* was decided in May of 1980. On the basis of the criteria set out in *Huson*, I find and hold that *Alvez* is not retroactive and that loss of consortium cannot be recovered in this case. See: *Christofferson v. Halliburton Co.*, 534 F.2d 1147 (5th Cir., 1976).

### VIII.

■ I find and hold that Martin and Martin was obligated to perform its contract on board the vessel in a good and workmanlike manner.

The negligence of Archie Duncan, the employee of Martin and Martin, in the operation of the crane constituted a breach of that warranty of workmanlike performance. That breach was the sole proximate cause of Plaintiff's injuries. A. C. Ellis was not negligent in any way that proximately caused the Plaintiff's injuries. Nor does its conduct preclude indemnity. Farmer Foundation was not negligent in any way that proximately caused the Plaintiff's injuries. Nor does its conduct preclude indemnity. The Plaintiff was not negligent in any respect that proximately caused or contributed to proximately cause his injuries.

### IX.

Martin & Martin Drilling Contractors is not entitled to indemnity from the A. C. Ellis Corporation. Martin & Martin Drilling Contractors is not entitled to contribu-

tion from A. C. Ellis Corporation. Martin & Martin Drilling Contractors is not entitled to indemnity from Farmer Foundation Company. Martin & Martin Drilling Contractors is not entitled to contribution from Farmer Foundation Company.

Intervenor, Fidelity and Casualty Insurance Company of New York, is entitled to recover the sum of Forty Thousand Six Hundred Eleven and 86/100 Dollars ($40,611.86), as reimbursement for the sums expended for worker's compensation benefits paid to Plaintiff Zelma R. Engle, out of the first moneys recovered by the Plaintiff against Martin and Martin.

I find and hold that A. C. Ellis is entitled to indemnity from the Defendant Martin and Martin. I find and hold that Farmer Foundation is entitled to indemnity from the Defendant Martin and Martin.

Costs will be charged to the Defendant Martin and Martin. Martin and Martin will likewise reimburse A. C. Ellis Corporation and Farmer Foundation for reasonable attorneys' fees and the parties will submit their briefs and proposed findings with respect to reasonable attorney fees.

The foregoing shall constitute Findings of Fact and Conclusions of Law herein. Findings of Fact herein which are properly considered Conclusions of Law are hereby adopted as Conclusions of Law. Conclusions of Law herein which are properly considered Findings of Fact are hereby adopted as Findings of Fact.

SUPPLEMENTAL FINDINGS OF FACT:

This Court by its Memorandum and Opinion dated October 1, 1980 in this cause found damages in the amount of $600,000.00 due and owing to the Plaintiff. Defendant Farmer Foundation Company now moves that the Court further particularize the damages which have been found. The Motion is granted. Damages herein are particularized as follows:

1. $475,000.00 is awarded for loss of earnings—past and future. This determination takes into account Plaintiff Engles' earnings at the time of the accident and his

anticipated earnings in the future based upon reasonable wage increases during future life expectancy. This award for past and future earnings duly considers liability for United States income taxes; and the feature of future earnings is discounted by an amount equal to the prevailing interest rate in Houston, Texas at the time of the trial.

2. $65,000.00 is awarded for past and future pain, suffering and mental anguish.

3. An award of $30,000.00 is made to the Plaintiff Engle for past and future loss of physical capacity. This award is and includes neither past and future earnings on the one hand nor pain, suffering, and mental anguish on the other hand as mentioned in paragraphs 1 and 2 above. *Noble v. Bank Line Limited*, 431 F.2d 520, 522 (5th Cir. 1970).

4. An award of $30,000.00 is made the Plaintiff Engle for past and future medical expenses.

The foregoing Constitutes Supplemental Findings of Fact herein. To the extent they may be Supplemental Conclusions of Law herein they are adopted as such.

It is so ORDERED.

FINAL JUDGMENT:

The Court has heretofore entered its Memorandum and Opinion awarding damages and assessing liability herein. Therein are contained findings of facts and conclusions of law pursuant to the Rule. Parties come on now with motions posterior to trial.

### I.

The Motion of the Defendant Martin and Martin to Reconsider and Vacate the aforesaid findings of fact and conclusions of law. This Motion is in all respects denied. These findings and conclusions by the Court were made with all deliberation and care. They are deemed to be both accurate and ample.

### II.

The Court clearly found full damages to the Plaintiff Engle in the amount of $600,-000.00. The Court clearly found sole negligence and fault, and sole liability for those damages, to rest with the Defendant Martin and Martin. Said Plaintiff is therefore entitled to an ultimate recovery under the opinion and judgment of the Court in the amount of $600,000.00 and no more and no less save interest. Defendant Martin and Martin's ultimate liability for *damages* (emphasis added) is equally $600,000.00 and no more and no less save interest.

Consistent with the foregoing, it is further ORDERED, ADJUDGED, and DECREED that:

1. The Plaintiff Zelma Ray Engle take nothing from the Defendants' A. C. Ellis Corp. or Farmer Foundation Company.

2. The Plaintiff Shirley H. Engle take nothing from any of the Defendants herein.

3. The cross-complaints of Martin and Martin against the Defendants A. C. Ellis Corp. and Farmer Foundation are dismissed with prejudice.

### III.

The Plaintiff cites the case of *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246 (5th Cir., 1979) for the proposition that the Plaintiff, in effect, is entitled to an additional recovery. This would result from any necessary denial to Martin and Martin of credit for amounts which the other Defendants have advanced to Plaintiff under agreement prior to trial for their any liability now determined to be nil. But *Leger* does not here apply to that effect or in any way. In *Leger*, fault was found and liability was fixed against more than one of several defendants. Nor was any defendant there compelled to pay more than his determined percentage of liability for the damages found. A result here other than that would be unsound on reasoning alone.

### IV.

The ruling of the Court awarded indemnity to Defendants A. C. Ellis Corp. and Farmer Foundation from Defendant Martin and Martin. Both said Defendants seek from Martin and Martin indemnity in the amount of $100,000.00 each and no more.

This represents amounts which each paid to Plaintiff under the agreements prior to trial. Indeed each under these agreements transferred over to Plaintiff substantial additional amounts. These additional amounts were from Farmer's Foundation $50,000.00 and from A. C. Ellis Corporation $40,611.86. The prior agreements, in the event of an eventual Court judgment generally favorable to these parties—which in fact resulted here, provide their own recourse for these Defendants against the Plaintiff for these aforementioned additional amounts. No result reached herein does in any way prejudice this recourse which these Defendants have against Plaintiff under the prior agreements.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that Farmer Foundation Company and A. C. Ellis Corporation, each and severally, recover from Defendant Martin and Martin Drilling Contractors $100,000.00, said sum, totaling $200,000.00, representing an amount paid by them to the Plaintiff in a prior settlement.

By the same token, and upon due payment, Martin and Martin will be credited to the extent of this amount on its liability for *damages* of $600,000.00.

## V.

It is further ORDERED, ADJUDGED, and DECREED that the Intervenor, Fidelity and Casualty Company, recover $40,-611.86 from the Plaintiff Zelma Ray Engle.

## VI.

The Court has heretofore awarded attorneys' fees in favor of A. C. Ellis Corporation and Farmer Foundation to be paid by Defendant Martin and Martin. The parties have stipulated as to the reasonableness of these attorneys' fees. The Court shall review, before it may approve, the amount of these attorneys' fees in light of the twelve relevant factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). See: *Malchey v. Petrofunds*, 75–H–1372 (February 18, 1981), a recent, able opinion by Judge Carl O. Bue of this Court involving other than a civil

rights case and emphasizing that *Johnson v. Georgia Highway* factors numbers (1), (5), (8) and (9), namely, the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability, of counsel should be primarily considered, citing *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575 (5th Cir. 1980).

The stipulated amounts that would be in favor of A. C. Ellis Corporation and Farmer Foundation are $14,970.59 and $14,876.47 respectively. These amounts include incidental expenses which are within the scope of the Court's award.

The competent proof of record as addressed to the criteria of *Johnson v. Georgia Highway* discloses the following:

1. *The time and labor required.*

a. Lead counsel for A. C. Ellis Corporation expended 144 hours of legal work on this case at the rate of $90.00 per hour; an associate attorney of that firm expended 32 hours of work at the rate of $50.00 per hour. A legal assistant expended a total of 8 hours of work at the rate of $25.00 per hour. The total amount for legal services proper is therefore $14,760.00. The total hours of legal work expended seem in every way reasonable and necessary for the legal representation of the client in this case; and the rates charged for each grade of attorney or paralegal is well within the professional standard of reasonableness in the community.

Incidental expenses totaled $210.59. These appear to be in every way reasonable in this case.

b. Attorneys representing Farmer Foundation expended 236.40 hours in legal work. At an average fee per hour of $59.84, this amounts to a legal fee proper of $14,145.00. The professional time expended and the average cost per hour are well within proper professional standards as applied to the case *sub judice*. Incidental expenses are here appropriate at the demonstrated cost of $731.47.

2. *The novelty and difficulty of the question.*

a. For A. C. Ellis Corporation several serious legal questions were presented and called for professional research. This litigant contended throughout that Plaintiff was a longshoreman within the meaning of the Longshoremen's and Harborworkers' Compensation Act, 33 U.S.C.A. 1301 et seq. Serious unresolved issues of law and fact existed here regarding Plaintiff's alleged status as a seaman. A serious legal question existed here as to whether there was a joint venture among the Defendants. A serious, and in this case no doubt the most serious, legal question involved the employment status of the crane operator, Archie Duncan. The question was whether or not he was a "borrowed servant" of either of these two Defendants. This issue was heavily contested throughout the case both as to law and fact and was a major factor in its determination.

It is therefore clear that for counsel to A. C. Ellis Corporation a number of complicated legal problems existed that required very competent analysis, research, and presentation.

b. For Farmer Foundation the same series of difficult questions faced their counsel as was the case with A. C. Ellis Corporation. No less competently were they addressed. Additionally, these counsel submitted an elaborate brief on the issue of damages which included a number of novel economic factors such as inflationary trends, interest rate considerations, and income tax consequences.

3. *The skill requisite to perform the legal service properly.*

a. Lead counsel for A. C. Ellis Corporation has been an accomplished specialist in the field of maritime law for more than two decades. Long admitted to practice at the highest levels of state and federal court systems, and deeply experienced in both trial and appellate work, the record here including the pleadings, the motions, the briefs, and the presentation, clearly attest to counsel's skill in this representation.

b. Lead counsel for Farmer Foundation has likewise been an accomplished maritime law specialist for more than twenty years. His, and associated, work product, preparation, and general ability as demonstrated in this case is of record. It is affirmatively cited here. And this caliber of professionalism was requisite to effective representation here.

4. *The preclusion of other employment by the attorney due to acceptance of the case.*

a. The representation of A. C. Ellis Corporation in this case was out of a major firm. The time expended by it totaled 184 hours. The attorneys committed to this case were maritime specialists. Ordinarily, in the operation of a major firm, the acceptance of a particular case will not preclude entertainment of other cases; and no professional time is lost save that expended in the particular case.

b. Farmer Foundation representation here was likewise out of a major firm—indeed, one noted for its maritime expertise—and no significant preclusion of other employment attended this representation other than any that might relate to actual professional time occupied and expended. This amounted to 246.40 hours.

5. *The customary fee.*

a. As noted before, the hourly rate charged for professional effort in the A. C. Ellis Corporation representation was within the bounds of what is reasonable, customary, and established locally. The stipulation of the parties, although not conclusive to the Court, lends its due weight.

b. What was found and stated in 5.a. above applies equally here to the representation of Farmer Foundation.

6. *Whether the fee is fixed or contingent.*

a. The representation of Ellis Construction Company was based on an hourly reasonable fee basis. No contingent fee was involved.

b. The representation of Farmer Foundation was also based upon professional time expended and not upon a contingent fee basis.

7. *Time limitations imposed by the client or the circumstances.*

a. As previously noted herein, representation for A. C. Ellis Corporation was a major firm. But the attorneys and their associates therein who were committed and involved expended significant time in factual development, settlement negotiations, trial preparation and presentation, and eventual exoneration from liability.

b. The considerations mentioned in 7.a. apply equally to the representation of Farmer Foundation.

8. *The amount involved and the results obtained.*

a. The Plaintiff Zelma Ray Engle was awarded damages of $600,000.00. The Defendant A. C. Ellis was exonerated from all liability and awarded reasonable attorneys fees.

b. The considerations mentioned in 8.a. apply equally to the representation of Farmer Foundation.

9. *The experience, reputation, and ability of the attorneys.*

a. The capability and integrity of lead counsel for Defendant A. C. Ellis Corporation is recognized. His experience in maritime law and litigation is also recognized. Nor is there anything known to the Court or evident in this record to impeach the quality of his associates.

b. The considerations mentioned in 9.a. apply equally to the representation of Farmer Foundation.

10. *The "Undersirability" of the case.*

a. This was a conventional maritime case and had no attributes of undesirability.

b. Same as 10.b.

11. *The nature and length of the professional relationship with the client.*

a. This representation of A. C. Ellis Corporation was a first time for this counsel. There had been previous representation of its insurance carrier.

b. Farmer Foundation and its principals were new clients to their representation in this case.

12. *Awards in similar cases.*

a. The Court takes judicial knowledge that the attorneys' fees claimed by counsel for A. C. Ellis Corporation is consistent with that for competent representation in similar cases.

b. What is stated in 12.a. applies equally to the representation in this case of Farmer Foundation.[1]

In conclusion, the Court finds and holds that reasonable attorneys' fees for the representation of A. C. Ellis Corporation is, as stipulated, in the amount of $14,970.59 and that reasonable attorneys' fees for the representation of Farmer Foundation is, as stipulated, in the amount of $14,876.47.

It is therefore ORDERED, ADJUDGED and DECREED, that the Defendant Martin and Martin Drilling Contractors additionally pay, as reasonable attorneys' fees, the amount of $14,970.59 to the Defendant A. C. Ellis Corporation and the amount of $14,876.47 to the Defendant Farmer Foundation.

### VII.

It is further ORDERED, ADJUDGED, and DECREED that the judgment in this case bear interest at the rate of 9% per annum from the date of the adjudication of liability herein, to-wit, the 1st day of October, 1980.

### VIII.

THEREFORE, there came on to be considered the evidence and argument of the

---

1. This case has occasioned the Court's commentary on the performance of counsel. It is then only fair and just in this case to mention, with the emphasis and sincerity of the Court, the readiness, learning, vigor, and courtesy with which Martin and Martin was at all times represented herein.

parties and the Court being of the opinion that judgment should be awarded to the Plaintiff Zelma Ray Engle, and that indemnity and reasonable attorneys' fees should be awarded to the Defendants A. C. Ellis Construction Co. and Farmers Foundation, it is so ORDERED, ADJUDGED, and DE-CREED.

This is and constitutes a FINAL JUDG-MENT.