FORET, Judge.
This is an appeal from one of two tort actions [1] consolidated for trial in the court below. In Civil Docket No. 31,878, the trial court, after trial, rendered judgment in favor of Wilson Lalonde (Mr. Lalonde) and against Elmer Naquin (Mr. Naquin), as administrator of the estate of his minor daughter, Patty Naquin (Patty), and United States Fidelity & Guaranty Insurance Company (USF&G), in solido, in the amount of $750.00 in general damages and $975.20 in special damages, with interest on those amounts from date of judicial demand, until paid. Also, in Civil Docket No. 31,878, the trial court rendered judgment in favor of Mrs. Wilson Lalonde (Mrs. Lalonde) and against Mr. Naquin, as administrator of the estate of his minor daughter, Patty, and USF&G in the amount of $12,000.00 in general damages and $548.48 in special damages, together with legal interest on those amounts from date of judicial demand, until paid. The trial court rejected all other claims made by Mr. and Mrs. Lalonde. The trial court also recognized the claim of Allstate Insurance Company (Allstate) for reimbursement in the amount of $2,241.35, which it had paid to Mr. and Mrs. Lalonde for the damages they sustained pursuant to the provisions of a policy of automobile liability insurance it had issued to them.
In Civil Docket No. 31,975 (the action in which this appeal is taken), the trial court rendered judgment in favor of Henry J. Singleton (Singleton), Mr. & Mrs. Lalonde, State Farm Mutual Automobile Insurance Company (State Farm), Allstate, and USF&G, rejecting the demands of Mr. Na-quin, made against them as defendants to that action, on behalf of the estate of his minor daughter, Patty.
Mr. Naquin and Patty appeal devolutively from the trial court’s judgment and raise the following issues:
(1) Whether the trial court committed manifest error in finding no negligence on the part of Singleton, which was a proximate cause of the injuries suffered by Patty;
(2) Whether the trial court committed manifest error in finding no negligence on the part of Mr. Lalonde, which was a proximate cause of the injuries suffered by Patty;
(3) Whether the trial court committed manifest error in finding Patty guilty of negligence in the operation of the automobile which she was driving;
(4) Whether the trial court committed manifest error in finding that Patty had failed to exculpate herself from her negligent conduct;
(5) Whether the trial court erred in failing to consider the opinion of Mr. Lalonde as to the cause of Patty’s conduct, which it subsequently found to constitute negligence on her part; and,
(6) As a result of all of the above, whether the trial court should have declared the amount of uninsured motorist coverage available under the USF&G policy issued to Mr. Naquin, and determined the amount of damages sustained by Patty for her personal injuries, which are alleged to have resulted from the negligence of Singleton and/or Mr. Lalonde.
FACTS
We have reviewed the record and are in complete agreement with the trial court’s findings of fact, and its conclusion of law and reasons for judgment. The trial court rendered an excellent written opinion in this case, which we adopt as our own. That opinion reads as follows:[2]
*1334 “FINDING OF FACT
At trial of these consolidated matters on September 28th and 29th, 1981, the following facts necessary for their determination were established:
On February 12, 1979, at approximately 4:30 PM, three vehicles converged upon the intersection of Louisiana Highway 328 and Semere Road which forms a T intersection therewith from the south at an angle of fifteen degrees[3], in St. Martin Parish. The Singleton automobile, being operated by Henry J. Singleton with Bennett Cormier as a passenger, was operated northward on Semere Road to the intersection, stopped, thence made a right turn onto Highway 328 to proceed in an easterly direction. The Lalonde automobile, with Mr. Lalonde driving and Mrs. Lalonde as a passenger, was being operated in an easterly direction on Highway 328. The automobile owned by Elmer Naquin and operated by his sixteen-year-old daughter with his permission and consent was being driven westerly on Highway 328. It was daylight, the weather was clear and the road surfaces were dry. The Lalonde vehicle was proceeding at approximately 50 miles per hour.
As Mr. Singleton turned, he made a wide right turn coming near to or momentarily crossing slightly over the center line of Highway 328. At that point, Ms. Naquin drove onto the shoulder of Highway 328 on its northerly side at a point approximately 180 feet east of the extended center line of Semere Road. All four wheels left the paved portion of the road and she traveled on the north shoulder and in the very shallow ditch. After traveling approximately 220 to 230 feet her vehicle turned left out of the ditch and began to move in a counter clockwise direction coming entirely across Highway 328 and being struck broadside by the Lalonde vehicle entirely in the eastbound lane of travel of Highway 328 at a point 40 to 50 feet west of the extended center line of the Semere Road.
Ms. Naquin did not see any vehicle approaching her until she saw a vehicle which she cannot identify coming at her head on and very fast and she turned to the right ending up on the shoulder and in the ditch. As she approached the intersection she did not see the Lalonde vehicle approaching nor did she see the Singleton vehicle making its turn.
There was no obstruction to Ms. Naquin’s view which would have prevented her from seeing the Singleton vehicle stopped prior to entering the intersection or upon entering the intersection, nor was there any obstruction which would have prevented her seeing the approaching Lalonde vehicle.
Ms. Naquin drove onto the north shoulder of the road contemporaneously with Mr. Singleton making his turn.
At no point was Mr. Lalonde’s view of the Naquin vehicle ever obstructed by the Singleton vehicle.
Mr. Lalonde did not consider that an accident would occur until the Naquin vehicle suddenly veered from the north shoulder and ditch and began coming directly across the highway into his lane of travel. At that point he attempted to apply his brakes but the collision was simultaneous with this attempt.
Mrs. Lalonde’s vision had been poor all of her life and is blurred at a distance.
Mrs. Lalonde was taken to the emergency room of Lafayette General Hospital where she was seen by Dr. Longo. She was found to have a four centimeter laceration of her scalp, two lacerations of the bridge of her nose, a compound fracture of the nasal bones, an abrasion of her neck, tenderness in her left flank, and multiple abrasions and lacerations of her left forearm, many of them still containing small particles of glass.
Dr. Longo sutured the head wound using twelve sutures, repaired the lacerations of the bridge of the nose using five sutures and repaired the lacerations of the elbow *1335 and forearm using four sutures. Mrs. Lal-onde was admitted to the hospital where she remained until February 15th and during that period a foreign body was removed from one of her fingers. She was treated by Dr. LeBlanc, an eye, ear, nose and throat specialist, and Dr. Longo, a general surgeon. On February 14th, Dr. LeBlanc reduced the fractures of the nasal bones under a local anesthetic. During her period of hospitalization, Mrs. Lalonde suffered moderate to severe pain and had some difficulty in breathing.
She was seen by Dr. Longo four times following her discharge from the hospital and all the problems for which Dr. Longo treated her had disappeared by the time she was discharged on June 14th. On that date she complained of headaches and stiffness in her elbow but she was taking no medication. Dr. LeBlanc treated her for the headaches but she related to Dr. Longo, in direct contradiction of her testimony on the witness stand, that for a period of twelve years prior to this accident she had suffered persistent frequent headaches following a hysterectomy.
Swelling from her nasal injuries disappeared in approximately two weeks and by February the 14th, she was doing quite well. However, she now has “floaters” in her eyes which are primarily a nuisance and do not seriously affect vision. They were not present prior to the accident. The cause of this phenomenon is unknown but Dr. LeBlanc feels that the trauma of the accident could have been the cause in her case since she denies experiencing this phenomenon prior to the accident.
Mrs. Lalonde’s corrected vision is 20-40 in each eye which means that she had lost approximately 30 to 40 percent of normal vision before the accident.
The difficulties with her nose had entirely disappeared in April of 1979 and her vision was restored after the accident to her pre-accident condition. However, the floaters persisted.
Mr. Lalonde sustained a bruise to his right upper arm and mild chest pain. All x-rays were negative and he was completely asymptomatic by March 12, 1979 and capable of returning to his regular work in the oilfield. Only conservative treatment was used.
Ms. Naquin suffered numerous life-threatening and extremely painful injuries but in view of the previous findings of fact made by the Court, they will not be detailed here.
The Naquin vehicle was insured by United States Fidelity and Guaranty Company by a policy of public liability insurance with the following limits:
Bodily injury, $250,000.00 per person— $500,000.00 per accident
Property damage, $100,000.00 Uninsured motorists coverage $5,000.00
per person $10,000.00 per accident Medical payments $5,000.00
The Lalonde vehicle was insured by Allstate Insurance Company with a like policy providing the following limits:
Bodily injury, $50,000.00 per person— $100,000.00 per accident
Property damage, $25,000.00
Uninsured motorists coverage $50,000.00 per person $100,000.00 per accident
Medical payments coverage $2,000.00 per person
The Singleton vehicle was insured by State Farm Insurance Company under a like policy providing the following limits:
Bodily injury, $5,000.00 per person — $10,-000.00 per accident
Property damage, $5,000.00
Mrs. Lalonde incurred expenses for the treatment of injuries sustained by her in this accident in the total amount of $2,545.48. Mr. Lalonde incurred like expenses for injuries which he sustained in the amount of $288.35.
Of these amounts Allstate Insurance Company paid under the medical payments portion of its policy on behalf of Mr. and Mrs. Lalonde $2,241.35.
Mr. Lalonde, as a result of the accident, missed the equivalent of fourteen days of work during which period, had he been able to work, his net take-home pay would have been $975.20.
*1336 CONCLUSIONS OF LAW AND REASONS FOR JUDGMENT
The key factual issue is whether or not the Singleton vehicle crossed the center line so as to justify Ms. Naquin’s driving off of the traveled portion of the road. The evidence on this point is in extreme conflict. Ms. Naquin testified that she saw a vehicle (unidentified) coming right toward her at a high rate of speed. (The Singleton vehicle was moving slowly. The Lalonde vehicle may have appeared to be moving rapidly and was indeed coming at her at one point). She could not tell whether it was turning or coming straight ahead. She did not see it previously to the time that it was seen by her in her lane.
Mr. Singleton and his passenger testified that while the Singleton vehicle approached near the center line it did not cross the center line. Mr. and Mrs. Lalonde testified that they were unable to say one way or the other. They both contended that it came near to the center line. However, Mr. Lal-onde at the hospital following the incident, stated to the officer and others that the Singleton vehicle had crossed the center line. It is possible, however, judging from the testimony of those witnesses as a whole, that what Mr. Lalonde stated was his conclusion that Mr. Singleton had caused the accident and from this those witnesses have concluded that his statement was that Singleton crossed the center line. Suffice it to say that Ms. Naquin and the Lalondes are the plaintiffs and they bear the burden of proving their case by a preponderance of the evidence. I do not find that a preponderance of the evidence establishes that the Singleton vehicle crossed the center line.
Inasmuch as the accident between the Naquin and Lalonde vehicles occurred entirely in the Lalonde’s lane of travel, it is presumed that the accident was caused through the fault of Ms. Naquin and it is her burden to exculpate herself from that position and show herself free from fault. Simon v. Ford Motor Company, 282 So.2d 126 (La.1973). I find that she has failed to do so. To begin with, her own testimony that she did not see the vehicle (presumed to be the Singleton vehicle) until it was in her lane of travel indicates contributory negligence[4] on her part. There is no reason why she could not have seen it turning into Highway 328 and even seen it while it was stopped at the intersection prior to turning if indeed she had been looking. Even her own expert witness, Mr. Ray Heard, testified that it was there for her to see and there was no impediment to her seeing it. Additionally, the evidence establishes that she could have continued westward on the shoulder and in the shallow ditch until her speed had been further reduced before making an effort to bring her vehicle back to the traveled portion of the highway. While there was some testimony concerning the presence of culverts at some point in the ditch on the north side of the road, the location of those culverts and their exact relationship to the place where she attempted to come back onto the road was never established. Accordingly, both of these actions would appear to constitute negligence on her part. Simon v. Ford Motor Co., supra; Robert v. Beard Engineering, Inc., 351 So.2d 795 (La.App. 1st Cir.1977).
That the Singleton vehicle did not in fact cross the center line is supported by the fact that Mr. Lalonde testified that his view of the Naquin vehicle was in no way at any time ever obstructed by the Singleton vehicle.
It would appear that a young and inexperienced driver was perhaps inattentive and overreacted to a situation which, had she been attentive, she would have seen as posing no immediate threat.
*1337 I can find no negligence on the part of either Mr. or Mrs. Lalonde, or Mr. Singleton.
In my view, an award of general damages to Mrs. Lalonde in the amount of $12,000.00 will adequately compensate her for the general damages which she sustained in this accident, and an award to Mr. Lalonde in the amount of $750.00 should compensate him for his general damages. In addition, they are entitled to recover the previously stated medical expenses incurred by each together with the $100.00 deductible which Mr. Lalonde was required to pay for the loss of his vehicle. Additionally, the claims of Allstate Insurance Company for reimbursement of the damages sustained by the Lalondes, which reimbursements it made pursuant to the terms of its policy in the amount of $2,241.35, should be recognized. All other claims and cross claims will be rejected.”
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.

. These two actions are: Wilson Joseph Lalonde, et ux. v. State Farm Mutual Automobile Insurance Co., et al, Docket # 31,878, 16th Judicial District Court, St. Martin Parish, La., from which no appeal was taken; and, Elmer Naquin, et al. v. Henry J. Singleton, et al., Docket # 31,975, 16th Judicial District Court, St. Martin Parish, La.

. The quoted portion of the trial court’s reasons for judgment has been edited and typographical errors have been corrected.

. Actually, what the trial court meant to say was that the Semere Road forms a T intersection with La. 328 from the south at an angle that is 15 degrees from perpendicular, or at an angle of 105 degrees.

. The trial court’s use of the term “contributory negligence” perhaps indicates that, had it found one or both of the other drivers negligent, it would have found Patty guilty of contributory negligence such that she would have been unable to recover from the negligent party, or parties. The issue of whether a certain plaintiff is guilty of contributory negligence does not arise until the defendant, from whom recovery is sought, has been found to have been guilty of negligence.