508 So.2d 211 (1987)
Malcolm W. EDMONDS, et ux., Plaintiff-Appellee,
v.
SHELTER MUTUAL INSURANCE CO., Defendant-Appellant.
No. 86-476.
Court of Appeal of Louisiana, Third Circuit.
June 9, 1987.
*212 Watson, Murchison, R. Raymond Arthur, Natchitoches, for defendant-appellant.
Charles R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Before FORET, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Shelter Mutual Insurance Company (Shelter), the uninsured motorist carrier of Malcolm and JoAnn Edmonds, appeals the trial court's award of $10,000 to JoAnn Edmonds subject to a credit of $5,000 William H. James (James), Chris Davis (Davis) and Insured Lloyds Insurance Company (Insured Lloyds), the underinsured tortfeasors, paid the Edmonds as part of a compromise agreement. Shelter contends that the trial court erred: (1) in failing to hold Shelter was released by virtue of the Edmonds' settlement with the underinsured tortfeasors; (2) in awarding JoAnn Edmonds an amount in excess of what she prayed for in her amended petition; (3) in granting an excessive damage award; and (4) in failing to credit the judgment for the full amount JoAnn Edmonds received from the underinsured tortfeasors. Although Shelter briefed the question of the Edmonds' release of the underinsured tortfeasors, it expressly abandoned this issue at oral argument.
We amend the trial court judgment to reduce the damage award and affirm. Because we find the damage award excessive and our damage assessment does not exceed the sum prayed for, Shelter's second assignment of error is moot.

FACTS
On October 3, 1984, Davis, driving James' automobile, ran a red light and struck an automobile driven by Mrs. Edmonds. The Edmonds sued Davis, James and Insured Lloyds, James' automobile liability insurer. The Edmonds compromised for $9,749.29, exactly the sum sued for, and then released Insured Lloyds, James, Davis and all other persons, firms and corporations.
The Edmonds next filed this suit against Shelter, their underinsured motorist carrier, to recover an additional $10,000 for Mrs. Edmonds' personal injuries and $5000 for Malcolm Edmonds' loss of consortium. Shelter answered the Edmonds' suit seeking a trial by jury, and further filed a third party claim against Davis. Thereafter, the Edmonds reduced their claims to $10,000 so that Shelter was no longer entitled to a jury trial. Prior to this bench trial Shelter's third party demand against Davis was severed.
Although Malcolm Edmonds sought $1500 for loss of consortium, the trial court found no evidence in support of this claim, and the Edmonds do not raise the denial of this item of damages on appeal. Likewise, Shelter does not contest the award of special damages to Mrs. Edmonds of $107 for lost wages and $512.17 for medical expenses. Rather, the focus of this appeal is Mrs. Edmonds' $10,000 damage award.

DAMAGES
Shelter contends Mrs. Edmonds' damage award is excessive.
*213 The original uninsured motorist statute was enacted to afford protection to insureds when they became innocent victims of the negligence of uninsured motorists. Booth v. Fireman's Fund Ins. Co., 253 La. 521, 218 So.2d 580 (1968). In 1974, LSA-R.S. 22:1406 was amended to extend uninsured motorist coverage to those situations where liability coverage on the tortfeasor's vehicle is less than the amount of damages suffered by an insured. Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La. 1981). As summarized in Bond, the object of the uninsured motorist statute is to promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available as primary protection when the tortfeasor is uninsured and as additional or excess coverage when he is inadequately insured. See also Niemann v. Travelers Ins., Co., 368 So.2d 1003 (La.1979).
A person who asserts a fact must carry the burden of proof of that fact and the fact must be established by a reasonable preponderance of the evidence. Sandel v. Travelers Insurance Company, 225 So.2d 736 (La.App. 3rd Cir.1969). Accordingly, it was incumbent upon the Edmonds to establish by a preponderance of the evidence that the settlement they received failed to compensate them for their total damages. The trial court's resolution of that issue in Mrs. Edmonds' favor now requires a determination of whether the damage award of $10,000 for Mrs. Edmonds' injuries constitutes an abuse of discretion.
Before an appellate court can disturb an award made by a trial court the record must clearly reveal that the trier of fact abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). As further stated in Coco:
"Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence." (Citations omitted.)
Then in Reck v. Stevens, 373 So.2d 498 (La.1979), the Supreme Court stated:
"Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La. Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, or insufficient. Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
* * * * * *

"In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) `similar' injuries, see Coco at 341 So.2d 334." (Citations omitted.)

The record shows the following evidence. On October 3, 1984, Mrs. Edmonds was treated immediately after the accident at the emergency room of the Natchitoches Parish Hospital, x-rayed, fitted with a cervical collar and released with a diagnosis of cervical strain.
Dr. John P. Sandifer, an orthopaedic surgeon, examined Mrs. Edmonds on October *214 9, 1984. At that time he noted she had marked decrease of cervical motion, muscle spasm and tenderness over both trapezius muscles bilaterally. In conclusion he confirmed the hospital's preliminary diagnosis of acute cervical strain, placed her on an anti-inflammatory medication and referred her to a physical therapist.
Dr. Sandifer saw Mrs. Edmonds next on October 16, 1984. His examination showed she had almost full range of neck motion, no pain into either arms, no muscle spasm and only some muscle soreness. Because of the improvement in Mrs. Edmonds' condition Dr. Sandifer discontinued the physical therapy and released her. Mrs. Edmonds did not seek nor require further medical treatment.
Mrs. Edmonds testified she suffered neck and shoulder pain daily for approximately one month after the accident and missed two days of work. At the trial, almost 16 months post-accident, she still experienced discomfort in her upper back and since the accident she has headaches weekly. However, she candidly admitted that non-prescription medication relieves her discomfort, and that her injury neither affected her employment nor her duties at home.
Considering the relatively minor injuries involved and utilizing the jurisprudential guidelines enunciated hereinabove, we conclude that $5,000 is the highest award for general damages Mrs. Edmonds is entitled to receive.
Mrs. Edmonds' special damages totaled $619.17. Therefore we conclude Mrs. Edmonds is entitled to receive general and special damages totaling $5,619.17.

SHELTER'S LIABILITY
Shelter contends that the trial court erred in not crediting it with the total settlement the Edmonds received or alternatively with at least $8,148.53, the amount itemized as Mrs. Edmonds' damages in the Edmonds' law suit against the tortfeasors.
Shelter is only obligated to pay that portion of Mrs. Edmonds' damages which exceed the tortfeasor's liability insurance limits and are within the underinsured policy limits. Niemann, supra. In determining what amount, if any, the underinsured motorist carrier is obligated to pay, it is the amount of the tortfeasor's policy limits, rather than the actual amount received by plaintiff which is relevant. White v. Patterson, 409 So.2d 290 (La.App. 1st Cir. 1981), writ denied, 412 So.2d 1110 (La. 1982). In the present case we concluded that Mrs. Edmonds' total damages amounted to $5,619.17. Therefore, since the record establishes that the tortfeasor's liability insurance limits were $5,000 per person, Mrs. Edmonds is entitled to receive judgment against Shelter for the sum of $619.17.
For the foregoing reasons the judgment of the trial court is amended and recast as follows: IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of JoAnn Edmonds and against Shelter Mutual Insurance Company in the full sum of $619.17 together with legal interest thereon from the date of judicial demand until paid. Costs of the trial court and this appeal are assessed to Shelter Mutual Insurance Company.
AFFIRMED AS AMENDED.