520 So.2d 1158 (1987)
Joseph C. THOMPSON, Plaintiff-Appellee,
v.
COLONY INSURANCE COMPANY, et al., Defendants-Appellants.
No. 86-1080.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
*1159 Monty L. Doggett, Watson, Murchison, Arthur & Corkern, Steven D. Crews, Natchitoches, for plaintiff-appellee.
Dara A. Loetzerich, Harvey, for defendants-appellants.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
LABORDE, Judge.
This action arises from a collision between a pickup truck and an 18-wheel truck on Louisiana Highway Six in Natchitoches Parish Louisiana. Plaintiff/appellee, Joseph C. Thompson, is the driver of the pickup truck.[1] The driver of the log truck was Billy D. Bell who was in the course and scope of his employment by Benny Bynog. Bell and Bynog along with the insurer of the truck, Colony Insurance Co. (Colony), are defendants/appellants. The underlying facts of this matter are undisputed. At about 6:20 a.m. on January 23, 1985, Bell was travelling east on Highway Six and was attempting to make a left turn onto Louisiana Highway 504. He stopped the truck to allow an oncoming car to pass before making the turn. Thompson was also travelling eastward on Highway Six and claims that he was going between 45 and 50 m.p.h. The evidence indicates that it was still dark outside at this time. Thompson claims that he suddenly saw the log truck stopped in front of him, but he could not stop in time to avoid hitting the rear of the truck. A log crashed through his windshield and struck his left arm causing the injuries that he now wishes to redress.[2]
The state trooper who investigated the accident ticketed Bell for violation of LSA-R.S. 32:382[3] because the logs extended 18 feet from the rear of the log truck while being driven at night, 3 feet longer than the 15 feet allowed by the statute. The trooper stated that the logs were not hanging far enough over the back of the truck to completely block off the view of the truck's brake lights and turn signals, but there were certain areas behind the truck where the view of these lights was obscured. Thompson told the officer that he did not need to go to the hospital in an ambulance, but later went with the officer to the hospital and was released shortly thereafter.
The trial court found Bell's negligence to be the sole cause of the accident and awarded Thompson a total of $51,468.50 in damages. This sum included $35,000 for past, present, and future pain and suffering; $15,000 for 10-15% permanent-partial disability of plaintiff's left arm; and $1,468.50 in special damages. Defendants appeal claiming two errors: (1) That the trial judge committed manifest error in not *1160 finding plaintiff contributorily negligent; (2) That the trial court abused its discretion in awarding excessive general damages and in awarding damages for permanent partial disability.

COMPARATIVE NEGLIGENCE
Appellants contend that the trial court was in error in not finding plaintiff to be contributorily negligent and in not reducing his award through the application of comparative negligence. Plaintiffs, on the other hand, contend that by violating LSA-R. S. 32:382(B)(1), Bell was negligent per se, thereby vitiating any possible culpability of plaintiff.
In determining whether to sustain the holding of the district court, we must consider whether its finding was clearly wrong or manifestly erroneous. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 972 (La.1985). The proper factors to consider as influencing the degree of fault assigned to the parties are:
"(1) whether the conduct resulted from inadvertence or involved an awareness of the danger
(2) how great a risk was created by the conduct
(3) the significance of what was sought by the conduct
(4) the capacities of the actor, whether superior or inferior
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Watson v. State Farm, 469 So.2d at 974; Veazey v. Parish of Avoyelles, 476 So.2d 1057, 1059 (La.App. 3d Cir.), writ denied, 478 So.2d 1236 (La.1985). The doctrine of comparative negligence is used to determine the damages available to each party when they are each found to have some degree of fault. A trial court's findings as to the percentages of fault are factual and must be upheld on appeal in the absence of clear and manifest error or an abuse of discretion. Benoit v. Hartford Cas. Ins. Co., 478 So.2d 707, 710 (La.App. 3d Cir. 1985), writ denied, 480 So.2d 745 (La.1986).
In making its determination of degrees of fault, the trial court should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Courmier v. Travelers Ins. Co., 486 So.2d 243 (La.App. 3d Cir.), writ denied, 489 So.2d 250 (La.1986).
In the present case, it is undisputed that Bell was in violation of LSA-R.S. 32:382(B)(1). The trial court correctly found that the violation of this statute was actionable negligence and was a legal cause of the accident. The trial court then considered whether or not there was any negligence on the part of the plaintiff, Thompson. Obviously the trial court found that Thompson was not contributorily negligent as the court stated in its reasons for judgment: "The Court holds that the sole and proximate cause of the accident was the negligence of Billy D. Bell, the driver of the defendant truck." This determination was not manifestly erroneous. We, therefore, hold that the plaintiff was not contributorily negligent in this matter.

DAMAGES
The plaintiff was initially treated through an outpatient clinic at the hospital and his arm was in a sling for 2-3 weeks. This period is also the only work time that plaintiff missed. After plaintiff consulted with his attorney, he went to see Dr. John Sandifer on April 15, 1985, who diagnosed plaintiff as having a contusion and some nerve irritation in his upper arm. Over the remainder of 1985 and the beginning of 1986, Thompson made several more visits to Dr. Sandifer. Plaintiff's condition improved and Dr. Sandifer did not feel that he could do anything else for the plaintiff. Plaintiff also visited Dr. Robert C. Holladay two weeks prior to the trial. The plaintiff claims to have missed work only for the 2-3 weeks that his arm was in a sling. He has continued to work as a computer *1161 programmer and electronics technician. He claims to have a "slight tendency" to drop objects and the pain in his arm is "pretty regular."
In order to disturb the award of damages made by the trial court, we must determine that the record clearly reveals that the trial court abused its discretion in making the award. If the award is lowered, it can only be lowered to the highest point reasonably within the discretion of the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976); Edmonds v. Shelter Mutual Ins. Co., 508 So.2d 211, 213 (La.App. 3d Cir.1987). In determining if the award is excessive, prior awards may be looked to if the present award is shown to be greatly disproportionate to past awards for similar injuries. Reck v. Stevens, 373 So.2d 498 (La.1979); Edmonds, 508 So.2d at 213. After reviewing the record in this case, we feel that the award given by the trial court was, in fact, an abuse of its discretion. In its opinion, the trial court found that plaintiff had a bruise on the bone of his left upper arm and also a peripheral nerve injury. The court found plaintiff to have 10-15% permanent/partial disability of his left arm. We do not feel that the amount awarded by the court is consistent with the type of injury sustained, nor do we feel that the preponderance of the evidence supports the court's finding of 10-15% permanent partial disability.
The trial court found that Thompson had 10-15% permanent partial disability. We feel this finding is speculative and unsupported by the record. Both doctors who testified were reluctant to assign any percentage of disability for Thompson and both also stated that he might fully recover within 6 months to 1½ years. Dr. Holladay testified in a deposition, which was made part of the record, that most evaluations of physical impairment or disability are based upon movements and motions of joints. He then said that he does feel that Thompson still has problems with the arm, but based upon this type of evaluation, he could not find any residual problems or effects on the joints. Dr. Sandifer stated that it was possible that Thompson would suffer residual disability, but it would be difficult to be very accurate or objective in determining a permanent disability rating. Dr. Sandifer reluctantly stated that if he had to assign a rating, it would be the "fairly subjective" figure of 10-15% of the upper left arm. Based on this testimony, we do not feel that a preponderance of the evidence supports the trial court's finding that Thompson has 10-15% permanent partial disability of his left arm.
Plaintiffs cite Belman v. St. Francis Cabrini Hospital, 427 So.2d 541 (La.App. 3d Cir.1983) in support of the damage award. In Belman, the plaintiff was awarded $55,000 for loss of income, permanent disability and pain and suffering. In describing the plaintiff's injuries, that court stated:
"Mrs. Belman remained hospitalized four days at Cabrini receiving treatment for the arm injury. Photographs in the record taken shortly after her release show extensive discoloration on the inside of her arm above and below the elbow. She suffered considerable pain. At trial, 21 months following the accident, she was still experiencing weakness and tremors in the hand and arm with occasional pain.
The evidence supports the trial court's finding that she suffered some permanent damage to the right median and radial nerves together with permanent muscle damage in her right hand and arm.
She lost almost half a year of work. She is right handed. Because the injury has limited the motor function of her hand, she has been unable to fully perform her work as a physical therapist's assistant. Her ability to write and perform other functions of the hand required in her work will be limited."
Belman, 427 So.2d at 546. The severity of the injuries suffered by Mr. Thompson do not even vaguely resemble those of the plaintiff in Belman. Mrs. Belman missed almost 6 months of work and was very limited in what she could do with her hand afterwards. She suffered permanent nerve and muscle damage. In our case, *1162 Mr. Thompson missed 2-3 weeks of work. Since that time, he has resumed his regular job and, in fact, has apparently been promoted.[4]
Based upon the evidence in the record, we do not feel that the $50,000 award of general damages found by the trial court is justified. An analysis of cases with other similar injuries reveals a wide range of damages which have been awarded by courts. The court in Aucoin v. State Farm Mutual Auto Ins. Co., 505 So.2d 993 (La.App. 3d Cir.1987), awarded a plaintiff with 5% disability to his left shoulder $500 in general damages. Naquin v. Singleton, 416 So.2d 1331 (La.App. 3d Cir.1982), involved a plaintiff with a bruised right upper arm who was able to return to work and who was awarded $750 in general damages. In Whaley v. Commercial Union Insurance Co., 499 So.2d 555 (La.App. 2d Cir.1986), the plaintiff received $900 in general damages for injuries which included contusions of the right shoulder and a mild strain of the left shoulder. Two other cases that involved similar types of accidents and injuries are Gearen v. Insured Lloyds Ins. Co., 461 So.2d 1192 (La.App. 3d Cir.1984) (which involved a plaintiff with 5% potential disability to her wrist) and Clement v. Torres, 503 So.2d 91 (La.App. 5th Cir.), writ denied, 505 So.2d 62 (La. 1987). Both cases awarded $5,000 in general damages. On the higher end of the spectrum are Weston v. Bayou Sale Contractors, 506 So.2d 818 (La.App. 1st Cir. 1987), $7,500 in general damages for an upper arm, neck and back injury and Sibley v. Hayden, 423 So.2d 54 (La.App. 1st Cir. 1982), which awarded $15,000 for pain, suffering and impaired use of plaintiff's right arm. Finally, Lescale v. La. Coca-Cola Bottling Co., 422 So.2d 241 (La.App. 4th Cir.1982) awarded $27,500 in general damages to a plaintiff who cut her hand on a soft drink can and had 15% permanent partial disability in her right hand.
After considering these cases, we feel that the facts of this case are more closely analogous to those cases that have given the lower awards mentioned above. However, in lowering such an award, it can only be lowered to the highest point reasonably within the discretion of the trial court.[5] We feel that the highest award reasonable is $30,000.

DECREE
The trial court's decision is thus affirmed as to the liability of defendants and as to the plaintiff not being held as contributorily negligent. The damages award, however, is amended and reduced to $31,468.50. Costs of appeal are assessed 50% to defendant, Colony Insurance, and 50% to plaintiff, Joseph Thompson.
AFFIRMED AS AMENDED.
NOTES
[1] This suit was consolidated at trial with State Farm Mutual Automobile Ins. Co. and Joseph Thompson v. Colony Insurance Co., La.Judicial Dist. # 10, docket no. 55,223. The suits remain consolidated on appeal; however, a separate judgment will be rendered this date entitled State Farm Mutual Auto. Ins. Co. and Joseph Thompson v. Colony Insurance Co., 520 So.2d 1162 (La.App. 3d Cir.1987).
[2] Prior to trial the parties entered into a joint stipulation setting property damage to the pickup truck at $4,988.50. These damages are the subject of the consolidated case.
[3] LSA-R.S. 32:382(B)(1) states:

"B. Special length limits
(1) Subject to the provisions of R.S. 32:380, R.S. 32:381, and Subsection A of this Section, the load upon any single vehicle or upon the front vehicle of a combination of vehicles shall not project more than four feet beyond the foremost part of said vehicle, and the load upon any single vehicle or upon the rear vehicle of a combination of vehicles shall not project more than eight feet beyond the rear of the bed or body of said vehicle, except that the load upon the rear vehicle of a combination of vehicles transporting poles and piling shall not project more than fifteen feet beyond the rear of the bed or rear tire of said vehicle whichever is further from the cab and the load upon the rear vehicle of a combination of vehicles transporting forest products in their natural state shall not project more than twenty feet beyond the rear of the bed or rear tire of said vehicle whichever is further from the cab, and said load or loads must maintain a two foot clearance above the pavement structure, and provided further said combination of vehicles transporting forest products in their natural state with a rear projecting load in excess of fifteen feet shall operate only during daylight hours and shall display a red flag or cloth not less than one foot square at the rear of its projected load."
[4] Plaintiff testified that at the time of the accident he was an electrician or maintenance hand. His position at the time of trial was as a computer programmer and electronics technician with the same company.
[5] Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976); Edmonds v. Shelter Mutual Ins. Co., 508 So.2d 211, 213 (La.App. 3d Cir.1987).