**Glenda Lees NEALY**

v.

**FLUOR DRILLING SERVICES, INC.**

**Beatrice C. SHIRLEY**

v.

**PENROD DRILLING COMPANY.**

**Aline Edwards STRETTON**

v.

**PENROD DRILLING COMPANY.**

Civ. A. Nos. 80–1430, 80–1398 and 80–1431.

United States District Court, W. D. of Louisiana, Lafayette-Opelousas Division.

Oct. 29, 1981.

Wilson M. Montero, Jr., New Orleans, La., William Henry Sanders, Jena, La., for plaintiffs.

Lance S. Ostendorf, Lawrence E. Abbott, New Orleans, La., for defendants.

## MEMORANDUM RULING ON MOTION FOR SUMMARY JUDGMENT

EDWIN F. HUNTER, Senior District Judge.

On May 12, 1980, in *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980), the Supreme Court of the United States held that the wife of a longshoreman injured in state territorial waters had a loss of society claim under the general maritime law. Gilberto Alvez, a longshoreman, lost his right eye due to an accident aboard a vessel within the territorial waters of New York. After filing a complaint based on the general maritime law, Alvez moved for leave to amend the complaint to add his wife's claim for loss of society. The trial court denied the motion, holding that the general maritime law did not afford the spouse of an injured worker a remedy for loss of society. The appellate division reversed and granted the motion, and the Court of Appeals of New York affirmed. The United States Supreme Court granted certiorari and held that the spouse of a maritime worker non-fatally injured aboard a vessel in state ter-ritorial waters may maintain an action for loss of society under general maritime law. The Supreme Court defined "society" as embracing " 'a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort and protection. With regard to husband and wife, the term "consortium" is used interchangeably with "society" and includes the conjugal friendship and sexual relations that are normally confined to the marital state.' " *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 275, 100 S.Ct. 1673, 1674, 64 L.Ed.2d 284 quoting *Sea Land Services, Inc. v. Gaudet*, 414 U.S. 573, 585, 94 S.Ct. 806, 815, 39 L.Ed.2d 9 (1974).

In *Alvez*, the Supreme Court considered a footnote sufficient to deal with the Fifth Circuit's opinion in *Christofferson v. Halliburton Co.*, 534 F.2d 1147 (5th Cir.), rehearing en banc denied 542 F.2d 1174 (1976), the leading case to reject a general maritime law recovery for loss of society. Citing the *Alvez* decision, the Fifth Circuit itself overruled *Christofferson* in *Cruz v. Hendy International Co.*, 638 F.2d 719 (5th Cir. 1981), holding that "the spouse of a seaman whose non-fatal injuries are attributable to the unseaworthiness of a vessel has a general maritime law cause of action for loss of his society" at 721. *Cruz* was a crewmember of the vessel "Louisiana Brimstone," working in Louisiana territorial waters. He filed suit against the vessel owner under the Jones Act, 46 U.S.C. § 688, and for the unseaworthiness of the vessel under the general maritime law. At the first hearing, the Fifth Circuit, deciding that it was bound by *Christofferson*, affirmed the district court judgment dismissing a complaint by Mrs. Cruz, the wife of the injured seaman. Mrs. Cruz petitioned for a rehearing en banc at the same time that the Supreme Court was handing down its *Alvez* decision. The petition was denied without prejudice and the case remanded to the original circuit court of appeals panel to consider the effect of the *Alvez* decision on *Christofferson* as precedent. The *Cruz* court based its conclusion on the *Alvez* holding that "neither statute [DOHSA and the Jones Act]

embodies an 'established and inflexible' rule here foreclosing recognition of a claim for loss of society by judicially crafted general maritime law."

We are presently faced with claims by the wives of three injured seamen for loss of society. Although the cases differ factually, they have been consolidated for the purpose of this motion for summary judgment.

(1) In the first case, *Beatrice C. Shirley v. Penrod Drilling Co.*, CI 801398, plaintiff's husband was injured on July 22, 1974. As a consequence of his injury, Mr. Shirley sued Penrod alleging negligence and unseaworthiness of one of its vessels in the United States District Court for the Eastern District of Louisiana, in a case bearing Civil Action No. 76–1277. The litigation culminated in a settlement for the sum of $350,-000. A receipt and release was executed on December 15, 1977 in consummation of that settlement. On January 18, 1979, a stipulation of dismissal was filed with the court. Mrs. Shirley initiated her action by filing suit on September 12, 1980 in the United States District Court for the Western District of Louisiana.

(2) In *Glenda Lees Nealy v. Fluor Drilling Services, Inc.*, No. CI 801430, plaintiff's husband was injured on August 18, 1975. Mr. Nealy sued Fluor Drilling Services, Inc., alleging negligence and unseaworthiness of one of its vessels in the United States District Court for the Eastern District of Louisiana in a case bearing Civil Action No. 76–2803. That litigation culminated in a settlement for the sum of $285,000. A receipt and release was executed on December 26, 1978 in consummation of that settlement. On January 4, 1979 a stipulation of dismissal was filed with the court. Mrs. Nealy initiated her action by filing suit on September 18, 1980 in the United States District Court for the Western District of Louisiana.

(3) In *Aline Edwards Stretton v. Penrod Drilling Co.*, No. 801431, plaintiff's husband was injured on November 8, 1975. Mr. Stretton sued Penrod Drilling Co. alleging negligence and unseaworthiness of one of

its vessels in the United States District Court for the Western District of Louisiana in a case bearing Civil Action No. 79–0134. That litigation culminated in a settlement for the sum of $650,000. A receipt and release was executed on June 6, 1980 in consummation of that settlement. On June 10, 1980, a stipulation of dismissal was filed with this court. Mrs. Stretton initiated her action by filing suit on September 18, 1980. Mrs. Stretton has died during the pendency of the action, and the suit is now brought by her husband, Carl, as administrator of her estate.

Significantly, none of these claims have ever been put forth in the previous litigation. Unlike the wives in the *Alvez* and *Cruz* cases, who filed their petitions contemporaneously with their husbands' lawsuits, and struggled through the judicial process before their rights were recognized, the plaintiff in each of these cases presently under consideration has allowed her claim to lie dormant for some five years.

Plaintiffs' counsel did not present any evidence in opposition to this motion, but a stipulation was reached wherein it was agreed that depositions and medical evidence from the husbands' previous litigation would be available for trial on the issue of liability. Defendants urge summary judgment on the grounds (1) that *Alvez* and *Cruz* should be applied prospectively and not retrospectively; (2) that the plaintiffs' claims are time-barred under the maritime theory of laches; and (3) that the releases signed by plaintiffs' husbands serve as a release in these claims as well.

## RETROACTIVITY

■ It is defendants' position that neither the law established in *Alvez* or *Cruz* should be given retrospective application. *Engle v. A. C. Ellis Corp.*, 509 F.Supp. 630 (S.D.Tex., 1980). In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court of the United States addressed the issue of retroactivity in civil cases. In *Huson*, the Court stated, at 106–107, 92 S.Ct. at 355:

"In our cases dealing with the non-retro-activity question, we have generally considered three separate factors. First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e. g., *Hanover Shoe v. United Shoe Machinery Corp.*, supra [392 U.S. 481], at 496 [88 S.Ct. 2224, at 2233, 20 L.Ed.2d 1231] or by deciding an issue of first impression whose resolution was not clearly fore-shadowed, see, e. g., *Allen v. State Board of Elections*, supra [393 U.S. 544], at 572 [89 S.Ct. 817 at 835, 22 L.Ed.2d 1]. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker*, supra [381 U.S. 618] at 629 [85 S.Ct. 1731, at 1735, 14 L.Ed.2d 601]. Finally we have weighed the inequity imposed by retroactive application, for 'where a decision of this court could produce substantial inequitable results if applied retroactively there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity." *Cipriano v. City of Houma*, supra [395 U.S. 701] at 706 [89 S.Ct. 1897 at 1900, 23 L.Ed.2d 647].

Consideration of these factors supports defendants' contention. *Alvez* created a new cause of action under general maritime law where none had previously existed. Although it can be argued that the *Alvez* decision was the next logical step in a developing line of cases beginning with *Moragne*, this resolution was not clearly fore-shadowed. Following *Alvez*, the *Cruz* case overruled the well-established precedent in the Court of Appeals for the Fifth Circuit that there is no right to recover for loss of society by the wife of a non-fatally injured seaman. *Christofferson*, supra. As this court anticipates, and so plaintiffs' counsel agree, a resolution favorable to plaintiffs on this issue would encourage thousands of similarly situated claimants to press forward in the federal courts. Where would we draw the line—1965, 1970, or in these 1975 cases?

The purpose and effect of *Alvez* is to allow recovery for the loss of society formerly enjoyed by the wife of an injured seaman. Whether this policy is furthered or retarded by non-retrospective application is now questioned. In *Alvez* the Supreme Court "discovered" this new right in the general maritime law; unlike the wrongful death action "discovered" in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, this new federal right is not a substitute for an old state-created cause of action. There is no impetus, then, to enforce it retrospectively, as there was with the *Moragne* decision, in order to insure uniformity. *Matter of S. S. Helena*, 529 F.2d 744 (1976). In that case the Fifth Circuit found retrospective application to be appropriate because a prospective application would have the effect of forcing the plaintiffs to rely on the state wrongful death statute:

> "Because a persuasive rationale for the enforcement of state wrongful death statutes in admiralty courts no longer exists after *Moragne*, we hold that the wrongful death remedy provided by that case precludes recognition in admiralty of state statutes. The general maritime law will therefore govern the case before us." *Matter of S. S. Helena*, 529 F.2d 744 (5th Cir. 1976).

Here, there is no policy of uniformity of the maritime law which is furthered by retrospective application. Non-retroactivity will not retard the policy proclaimed, but will provide a logical beginning point for the enforcement of the plaintiff's new right. Any other holding would prejudice defendants who were either cast in liability or settled amiably the suits by the present plaintiffs' spouses, open them to new and greater liability which they did not contemplate or guard for specifically, and open the Court's doors to a deluge of litigation.

## LACHES

■ The timeliness of an action brought under general maritime law has until

recently been determined under the doctrine of laches, the doctrine immemorially applied to admiralty claims. Laches is a doctrine peculiar to the admiralty, which requires an action to be brought within a reasonable period of time after the cause of action arises or accrues. Most often, a "reasonable" period is deemed to be one in which there has been no prejudice to the defendant caused by the delay.[1]

The defendants suggest that the Court should dismiss the plaintiffs' general maritime law claims on the basis of laches inasmuch as the extreme delay is without adequate justification and has caused the defendants irreparable prejudice. As was recounted above, five years have elapsed between the accidents upon which the plaintiffs' claims are predicated and the time the plaintiffs filed their complaints. During that five-year period, not one of the plaintiffs asserted any demand for loss of society. Defendants maintain that this delay has inhibited his ability to conduct effective discovery and to defend such a claim on trial on the merits.

 Laches, an equitable doctrine, is not, like limitation, a mere matter of time, but principally a question of the equity or inequity of permitting the claim to be enforced. *Holmberg v. Armbrecht*, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. One factor to be considered in determining whether laches bars assertion of a claim, and in apportioning the burden of persuasion is whether the analogous statute of limitations has expired.

"The period of delay triggering operation of the doctrine [of laches] in personal injury actions under General Maritime Law must be measured according to the analogous statute of limitations, in this case the three year period of the Jones Act." *Holifield v. Cities Services Tanker Corp.*, 421 F.Supp. 131, 137 (E.D.La.1976), affirmed (5 Cir.) 552 F.2d 367.

Rather than marking an absolute cut-off date beyond which injured parties may no longer effectively bring suit, the analogous limitation period determines the burden of proving or disproving inexcusable delay and resulting prejudice. *Barrois v. Nelda Faye, Inc.*, 597 F.2d 881 (5th Cir. 1979). However, once the applicable period of prescription has run, there arises a presumption of laches, and the burden shifts to the plaintiff to show that his delay was excusable and that the defendant was not prejudiced thereby. See *Watz v. Zapata Off-Shore Oil Co.*, 431 F.2d 100 (5th Cir. 1970), at 111; *Muller v. Lykes Bros. Steamship Co.*, 337 F.Supp. 700, 702 (E.D.La.1972) and cases cited therein.

Since the plaintiffs did not assert their claim until long after the passage of the analogous three year period, the presumption of laches applies and the burden is on the plaintiffs.

 Given the necessity for uniformity in the administration of this judge-made cause of action, the plaintiffs in these cases have the burden of showing strong justification for delay. The plaintiffs have not shown that the defendants have or will not be prejudiced, or that the delay was excusable. We do not hesitate to conclude that the plaintiffs have failed to establish a reasonable excuse for their delay of some five years in bringing the present actions, nor has it been demonstrated that a lapse of some five years would not be prejudicial to the attempts of the defendants to defend the loss of society cause of action.

## THE RELEASES

 Defendants' third contention is that the releases signed by plaintiffs' husbands serve to release them from the presently contested liability. This defense will have to be considered in view of each individual release.

---

1. This standard was statutorily overruled by an Act of October 6, 1980, signed into law as Public Law No. 96–382, 94 Stat. 1525, 46 U.S.C. 763a, which reads: "unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action arose." Since both the accident which gives rise to this cause of action, and the institution of the suit occurred prior to this law's passage, we hold that this suit is governed by laches and not the new law.

(1) The release of Ezell Shirley reads in pertinent part:

"In further consideration of the aforementioned payment, the said Ezell Shirley hereby covenants and agrees to defend, indemnify, and hold forever harmless Penrod Drilling Co.... [other defendants, et al] ... from and against any loss, claim or damage of any nature whatsoever incurred or sustained, or which may be incurred or sustained in the future, by anyone, directly or indirectly, as a result of his injuries and medical treatment therefor recited hereinabove."

Worth noting within the list of injuries recorded on page one of the release is "alleged sexual dysfunction." This release can not waive Mrs. Shirley's cause of action, without her signature, but it would allow Penrod to receive indemnity from Mr. Shirley for the full amount of any judgment Mrs. Shirley might receive.

(2) The release of George Nealy only extends to himself:

"My heirs, assigns or legal representatives."

There is no indemnity agreement as such, and this release is no bar to Mrs. Nealy's suit.

(3) The release and indemnity agreement signed by Mr. Stretton particularly excludes the lawsuit instituted by his wife, the late Mrs. Stretton, and thus is no bar to the present lawsuit.

## CONCLUSION

The motion for summary judgment should be granted in each case. Although the Fifth Circuit has indicated, by footnote, in *Mallard v. Aluminum Co. of Canada, Ltd.*, 634 F.2d 236 (1981), that *Alvez* will apply retroactively, we read this in light of the facts of those cases, wherein the wife had instituted her own claim either contemporaneously or closely in time with that of her husband. And although *Cruz* specifically provides that the spouse is not required to join her claim with that of her husband, we do not believe that the Fifth Circuit was inviting a plethora of cases by the spouses of seamen who were injured at any time in the past 20 years or so.

It is equally clear that plaintiffs have not borne the burden necessary to overcome the presumption of laches. Plaintiffs have offered no evidence either to the excuse for their delay or to show that the defendants have not been prejudiced. Defendants maintain that they are irreparably injured both in their ability to conduct effective discovery and to defend on the merits. They assert that the passage of time has substantially affected the memories of the witnesses to the incidents involving the plaintiffs' husbands, as well as with respect to their damages. Indicative of this is the fact that one of the plaintiffs, Mrs. Aline Stretton, has died during the pendency of the suit, which is now brought by her husband as administrator of her estate.

Summary Judgment is granted in each case.