555 So.2d 11 (1989)
David LECKELT, et al Plaintiffs-Appellants,
v.
EUNICE SUPERETTE, INC., et al Defendants-Appellees.
No. 88-883.
Court of Appeals of Louisiana, Third Circuit.
December 13, 1989.
Writ Denied February 23, 1990.
*12 Privat & Regan, Kenneth O. Privat, Crowley, for plaintiffs-appellants.
Dauzat, Falgoust, Caviness & Bienvenu, Peter F. Caviness, Opelousas, for defendants-appellees.
Before DOMENGEAUX, YELVERTON and KING, JJ.
DOMENGEAUX, Judge.
Mr. and Mrs. David Leckelt filed this suit for personal injuries sustained when a six pound meat hook fell approximately ten feet and hit Mr. Leckelt on the head while he was a customer in the Eunice Superette. A jury awarded Mr. Leckelt $15,000.00 in damages, but also found him to be fifty percent at fault. Additionally, the trial judge granted an exception of no right of action as to Mrs. Leckelt's loss of consortium claim. Plaintiffs have appealed, alleging the following assignments of error:
1. The trial court erred in sustaining the exception of no cause of action as to Mrs. David Leckelt's claim for loss of consortium;
2. The jury committed manifest error in finding the plaintiff guilty of fifty percent comparative negligence; and
3. The jury committed manifest error in finding plaintiff's damages to be only $15,000.00.

FACTS
On January 11, 1985, Mr. Leckelt went to the Eunice Superette to purchase a hog. He requested, and was given permission, to enter the meat cooler to make his selection. According to Mr. Jerome Moore, proprietor of the slaughterhouse at Eunice Superette, customers were frequently allowed into the cooler to choose their own meat.
The refrigeration area at the Eunice Superette is designated as a "hard hat" area by USD A regulations. However, it is undisputed that plaintiff was not given a hard hat before he entered the cooler.
Mr. Leckelt was accompanied into the meat cooler by Mr. Eurell Meche, an employee at the Eunice Superette. After Mr. Leckelt made his selection, Mr. Meche unhooked one side of the hog and then momentarily left the cooler. At this point the parties present differing versions of the facts. According to Mr. Leckelt, when Mr. Meche returned he requested plaintiff's assistance in taking down the other side of the hog, and the hook fell as Mr. Leckelt was holding the hog for Mr. Meche. Mr. Meche claims the hook had already fallen by the time he returned, apparently after Mr. Leckelt tried to unhook the hog himself.
The plaintiffs filed the instant suit on March 5, 1985, naming as defendants Eunice Superette, Inc. and its insurer, New Hampshire Insurance Company. The original defendants subsequently third partied Roberts Refrigeration, Inc., Koch Supplies, Inc. and La Fiell Company, as the alleged manufacturers and installers of the meat hook in question. These third party defendants were all dismissed by summary judgment, and the plaintiffs proceeded to trial against only Eunice Superette and New Hampshire.

LOSS OF CONSORTIUM
May a spouse who marries an injured tort victim after the date of his accident maintain a claim for loss of consortium under La.C.C. art. 2315? We conclude the trial court correctly resolved this *13 res nova issue by granting the defendants' exception of no right of action.
Jackie Dietz and David Leckelt lived together for approximately fourteen years before Mr. Leckelt's accident of January 11, 1985. During this time, the couple raised four children. However, they did not marry until June of 1986, almost a year and a half after the accident.
By Acts 202 of 1982, the legislature amended art. 2315 to allow recovery for the loss of consortium, services and society of a tort victim who is injured, but who does not die. The second paragraph of that article now reads:
Damages may include loss of consortium, services and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
This amendment broadened the scope of art. 2315 and created a cause of action which had not previously existed. Coates v. Owens-Corning Fiberglas Corp., 444 So.2d 788 (La.App. 4th Cir. 1984). This new cause of action, however was created only in favor of those beneficiaries, now listed in art. 2315.2, who may bring a wrongful death action.[1] Thus, in determining whether Mrs. Leckelt has a claim for loss of consortium under 2315, we must look to the jurisprudence interpreting the designated classes of beneficiaries in art. 2315.2.
It is well established that an action for wrongful death is purely statutory, existing in favor of certain classes of persons specifically designated; all who are not expressly included within the terms of the statute are held to be excluded. Gibbs v. Illinois Central Railroad Company, 169 La. 450, 125 So. 445 (1929). In the absence of some specific provision of law, the courts may not increase these beneficiaries. Chatman v. Martin, 245 So.2d 423 (La. App. 2nd Cir. 1971).
Under the jurisprudence in this state, only a lawful spouse may maintain a wrongful death action. Gibbs, supra; Lewis v. Allis-Chalmers Corp., 615 F.2d 1129 (5th Cir. 1980). Because Louisiana does not recognize the validity of so-called "common law" marriages, a party living in such a relationship may not maintain a wrongful death claim. Tidewater Marine Towing, Inc. v. Curran-Houston, Inc., 785 F.2d 1317 (5th Cir.1986).
Paragraph two of article 2315 incorporates by reference the beneficiaries listed under 2315.2. Accordingly, we must conclude the principles quoted above are applicable to a loss of consortium claim under 2315. Because Mrs. Leckelt was not a member of any designated class of beneficiaries on the day of the accident, the trial court properly denied her claim. To hold otherwise would be an unwarranted extention of statutory rights which have heretofore been strictly construed.
Finally, even if Mrs. Leckelt did have a right of action under 2315, we fail to see how she could prove any damages. Because she did not marry David Leckelt until after his damages were sustained, this accident could have no effect on an existing marital relationship. An award for loss of consortium is only proper where there has been some measurable or compensable loss. Johnmeyer v. Creel, 499 So.2d 571 (La.App. 2nd Cir.1986). Such claims have been denied where there was no proof that the marital relationship was adversely affected. Vidrine v. Government Employees Insurance Company, 528 So.2d 765 (La.App. 3rd Cir.1988), writ denied, 532 So.2d 156 (La.1988) and Scott v. Coastal Dragline Works, 525 So.2d 695 (La.App. 1st Cir.1988).

*14 COMPARATIVE FAULT
Plaintiffs contend the jury erred in finding Mr. Leckelt to be fifty percent at fault. This factual finding must be upheld on appeal in the absence of manifest error or abuse of discretion. Thompson v. Colony Insurance Company, 520 So.2d 1158 (La.App. 3rd Cir. 1987).
In Watson v. State Farm Fire & Casualty Insurance Company, 469 So.2d 967 (La.1985), the Louisiana Supreme Court has set forth the proper factors to consider in assigning a degree of fault to each party:
(1) Whether the conduct resulted from an inadvertance or involved an awareness of danger.
(2) How great a risk was created by the conduct.
(3) The significance of what was sought by the conduct.
(4) The capacities of the actor, whether superior or inferior.
(5) Any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
In making its determination of degrees of fault, the trial court should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Thompson, supra; Courmier v. Travelers Insurance Company, 486 So.2d 243 (La.App. 3rd Cir. 1986), writs denied, 489 So.2d 250 (La.1986).
In the instant case, the jury apparently accepted the defendant's version of the accident as correct. In deciding which scenario represented the truth, the jury was required to assess all evidence presented, including the credibility of each witness. We will not disturb this finding in the absence of manifest error.
Applying the principles of Watson, we find no abuse of discretion in the jury's assessment of fault. Mr. Leckelt was present when Mr. Meche unhooked the first side of the hog. He then voluntarily attempted this complicated procedure alone, with no prior experience. Hence, his conduct was not the result of mere inadvertance. Additionally there were no factors indicating the need for haste, as Mr. Meche stated he would return momentarily. Finally Mr. Meche had no reason to suspect Mr. Leckelt would attempt this maneuver on his own. The jury found that plaintiff's conduct of unhooking the hog and defendant's failure to furnish a hard hat equally contributed to the accident and to plaintiff's damages. Finding no manifest error, we affirm the jury's assessment of fault.

DAMAGES
After the accident, plaintiff was treated by Dr. Sylvan Manuel, who sutured a scalp laceration with five stitches. Xrays taken later failed to reveal any fractures of the skull, and a CT scan was within normal limits.
Prior to the accident Mr. Leckelt was a healthy, self-employed, twenty-seven year old male, although all physicians who examined him testified he was functioning at a borderline, dull intellectual level. For approximately a year and a half after the accident, plaintiff continued to complain of headaches, dizziness, nausea and memory lapses. Plaintiff attempted suicide in April of 1986. His treating physicians, Dr. Alfred Harmon and Dr. James Domingue, diagnosed his condition as post traumatic or post concussive stress disorder accompanied by major depression, caused by the accident of January 11, 1985. Both doctors prescribed anti-depressants and pain medication as well as extensive physical therapy. Their diagnosis was confirmed by Dr. William Preston Cloyd, a psychiatrist, who believed plaintiff was suffering from a major emotional illness of which depression played a large part.
Plaintiff's condition was also evaluated by Dr. Allen Joseph, a neurological surgeon, and Dr. Gilles Morin, a psychiatrist. Both physicians agreed that plaintiff suffered a depressive reaction to the trauma of January 11, 1985; however, they both believed plaintiff exhibited significant symptom magnification, possibly attributable to his pre-existing low intellectual level. In Dr. Joseph's opinion, plaintiff's symptoms should have lasted between six weeks *15 to six months, considering plaintiff suffered only a relatively minor head injury.
The jury awarded plaintiff total damages of $15,000.00, which included medical expenses totalling $4,794.00.
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is inadequate. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
After a careful review of the record, we cannot say an award of $15,000.00 for post traumatic stress disorder caused by a minor head injury, which produced no fractures or neurological abnormalities and which did not result in loss of consciousness, is an abuse of discretion. See Richard v. Guillory, 392 So.2d 777 (La.App. 3rd Cir.1980). Accordingly, we affirm the verdict of the jury.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellants, Jackie and David Leckelt.
AFFIRMED.
NOTES
[1] Art. 2315.2 provides in pertinent part:

A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children;
(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving; and
(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child or parent surviving.