591 So.2d 1201 (1991)
Vicki ALDREDGE and James Aldredge, Plaintiffs-Appellants,
v.
John WHITNEY and State Farm Insurance Company, Defendants-Appellees.
Nos. 22959-CA, 22999-CW.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1991.
Rainer & Anding by John S. McLindon, Baton Rouge, for plaintiffs-appellants.
Theus, Grisham, Davis & Leigh by Thomas G. Zentner, Jr., Monroe, for defendants-appellees.
Before MARVIN, SEXTON and STEWART, JJ.
STEWART, Judge.
Plaintiffs, Vicki and James Aldredge, sued defendants, John Whitney and State Farm Mutual Automobile Insurance Company (State Farm), for injuries arising from a January 19, 1989 automobile accident. The trial court sustained defendants' exception of res judicata as to Mrs. Aldredge's claim after finding that she executed a valid release of any claim she might have against defendants. The trial court denied defendants' exception of no right of action as to Mr. Aldredge's claim for loss of consortium. Mrs. Aldredge appeals the trial court ruling, asserting that her consent to the release was vitiated by error. This court granted defendants' writ application which asserts that Mr. Aldredge has no right of action because his loss of consortium claim is derivative of Mrs. Aldredge's claim. These matters have been consolidated for review.

FACTS
Vicki Guidry was injured in an automobile accident on January 19, 1989. On January 31, 1989 she gave a release to Randy Allen, an adjustor with State Farm. The *1202 document purportedly released the defendant, John Whitney, as well as his insurer, State Farm. In return for the release, Ms. Guidry received $500. In June 1989 she married James Aldredge. In October 1989 she developed a ruptured disk which allegedly was caused by the automobile accident.
In January 1990, Vicki Guidry Aldredge and her husband sued Whitney and State Farm, seeking to recover damages both for Mrs. Aldredge's injuries and for Mr. Aldredge's loss of consortium. In response, the defendants filed exceptions of (1) res judicata as to Mrs. Aldredge's claims and (2) no right of action as to Mr. Aldredge's claims. The trial court sustained the exception of res judicata and Mrs. Aldredge appeals, asserting that the release was invalid. The trial court denied defendants' exception of no right of action with respect to Mr. Aldredge's claim for loss of consortium. Defendants, John Whitney and State Farm, by writ application, seek review of that ruling. The writ was granted and consolidated with the appeal. We affirm the trial courts' judgment on each of defendants' exceptions.

APPEAL OF THE SUSTAINED EXCEPTION OF RES JUDICATA
Appellant, Vicki Aldredge, contends that her consent to the release was vitiated by error because she never intended to release her claim against State Farm and its insured. She asserts that the release was invalid because the requisite intent was not present.

Discussion
Compromise agreements cannot be attacked for an error in law or for lesion. LSA-C.C. Art. 3078. However, compromise agreements can be contested for errors in calculation, error in the person, fraud, violence or an error on the matter in dispute. LSA-C.C. Art. 3078-3079. A compromise agreement extends only to those matters which the parties expressly intend to settle. LSA-C.C. Art. 3073; Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir.1983); Matthew v. Melton Truck Lines, Inc., 310 So.2d 691 (La.App. 1st Cir.1975). Ordinarily, the meaning and intent of the parties to a written contract, such as a written compromise agreement, must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. Art. 1848; Smith, supra; Tauzin v. Claitor, 417 So.2d 1304, 1309 (La.App. 1st Cir. 1982), writ denied, 422 So.2d 423 (La.1982). An exception to this rule exists when there is a dispute between the parties as to exactly what matters were intended to be settled by the compromise agreement. LSA-C.C. Art. 3079; Smith, supra; Moak v. American Automobile Insurance Company, 242 La. 160, 134 So.2d 911 (1961); Munna v. Mangano, 404 So.2d 1008 (La.App. 4th Cir. 1981).
Courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. LSA-C.C. Arts. 2045, 2046; Smith, supra; Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 218 (La.1982). A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it. Smith, supra; Carter Insurance Agency, Inc. v. Franklin, 428 So.2d 808, 812 (La.App. 1st Cir.1983). Failure to read a release is neither an acceptable defense nor a reasonable excuse. Thigpen v. Guarisco, 197 So.2d 904, 906 (La.App. 1st Cir.1967); Smith, supra.
The single issue presented by the appeal is whether the trial court erred in determining that the release, signed by appellant, was valid. The undisputed facts show that, approximately two weeks after the accident, Mr. Randy Allen, the State Farm adjustor, visited appellant in the lobby of her dormitory at Northeast Louisiana University. Ms. Ashley Watkins, the other passenger in the car, was present and also signed a release. At trial on the exception of res judicata, both appellant and Ms. Watkins testified that they read the release *1203 and signed it. However, appellant asserts that she was not aware that she was releasing all of her future rights against State Farm when she signed the release.
Testimony revealed that, although Mr. Allen did not explain each and every line of the release which appellant signed, he did explain what the release meant and told appellant that by signing she was releasing both the party at fault and State Farm Insurance. Before visiting with the girls Allen had obtained a medical report made by Dr. Doug Brown which indicated that Mrs. Aldredge's injuries were minor. Allen further testified that appellant did not seem confused when he made his explanation. She did not ask for additional time to confer with anyone although he would have given her more time if she had wanted it. Allen testified that he did not make the settlement offer in a "take it or leave it" fashion.
Appellant testified that Allen handed the release to her and Ashley, told them to read it, and told them that if they signed the release their medical bills would be paid plus they would receive $500. When asked if she read the release, she responded affirmatively, but when asked if she understood she replied "Not clearly." On cross-examination her attention was called to a paragraph in the release referring to injuries which have resulted or may in the future develop from the accident. When asked if she saw that language when she signed the release, she replied "As far as I can remember," and when asked whether she told Mr. Allen that she was confused or didn't understand, she replied in the negative.
Smith, supra, involved a release signed by a plaintiff with respect to an automobile accident in which State Farm was the insurer that provided the written instrument effecting a release of the insured and State Farm.
There, Smith testified that because she did not read the document she did not know that she was signing a release for personal injuries and thought that she was just signing for property damage. She also testified that she could not read very well, that she glanced at some of the things in the document and that some things she could not understand. She further testified she had a seventh grade education, was given an opportunity to read the document, and was given a copy of the document after she signed it.
While Smith testified that she intended to compromise only her claims for property damage and that she did not intend to release her claims for personal injuries, the court found that the trial judge obviously had rejected the testimony of Smith on the issue, and that after reviewing the record, the court could not say that the factual determination was clearly wrong.
In factual contrast to Smith, the instant trial court found that appellant was an above average college student. The court also found that, while there were some legal terms within the release, the release itself was clearly written. Appellant claims that she did not understand the release.
After trial on the exception, the court noted that plaintiff admitted under oath that she received the release, that she read the release, and that she signed it and received monetary consideration in the amount of $500. Thus, by granting the exception of res judicata, the trial court implicitly rejected appellant's testimony on the issue of her intent and understanding.
Smith`s legal principles are applicable to the case at bar. On this record, we find no manifest error in the trial court's determination that the release was valid. Accordingly, the trial court's decision with respect to the exception of res judicata is affirmed.

WRIT APPLICATION ON THE DENIED EXCEPTION OF NO RIGHT OF ACTION

Does respondent have a right of action for loss of consortium?
Respondent James Aldredge asserted a claim for loss of consortium due to injuries sustained by his wife, Vicki Guidry Aldredge. Applicants, John Whitney and State Farm, contend that respondent was not married to Vicki Guidry at the time of *1204 the accident and is therefore not a member of the designated class of beneficiaries who may assert the loss of consortium claim.
Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts. LSA-C.C.P. Art. 681. The peremptory exception of no right of action raises the question of whether the plaintiff has any interest in judicially enforcing the right asserted. Teachers Retirement System v. Louisiana State Employees Retirement System, 456 So.2d 594 (La.1984).
In Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3d Cir.1967), Judge Tate, writing for the third circuit court of appeal, explained the purpose of the exception of no right of action. The following excerpt from Bielkiewicz has been approved by the Louisiana Supreme Court:
The want of interest raised by the exception relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the law grants the cause of action sought to be asserted by the suit, with the factual evidence admissible being restricted as to whether this particular plaintiff does or does not fall within the general class having legal interest to sue upon the cause of action asserted.
* * * * * *
In short, the objection of no right of action raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation, assuming (for the purpose of deciding the exception) that a valid cause of action is pleaded by the petition. LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727.
See Teachers Retirement System, supra; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).
Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. LSA-C.C.P. Art. 865; Teachers Retirement System, supra. When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Teachers Retirement System, supra at 596.
Louisiana has established a cause of action for loss of consortium, service and society. Shepard v. State Farm Mutual Automobile Insurance Company, 545 So.2d 624, 629 (La.App. 4th Cir.1989), writ denied, 550 So.2d 627 (La.1989). This right to recover damages for loss of consortium is authorized by LSA-C.C. Art. 2315 which provides as follows:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
The 2315 cause of action is created in favor of the injured victim and the same categories of family members who would have had a cause of action for the wrongful death of the victim under LSA-C.C. Art. 2315.2. LeJeune v. Rayne Branch Hosp., 539 So.2d 849 (La.App. 3d Cir.1989), affirmed, 556 So.2d 559 (La.1990).
Respondent argues that his loss of consortium arises from a January 1989 tortious act upon Vicki Guidry Aldredge which caused injuries that did not become apparent until October 1989. It is undisputed that respondent has been the husband of Vicki Guidry Aldredge since June 1989. According to the petition, as a result of the January 1989 collision which was due solely to applicant John Whitney's negligence, respondent's wife began experiencing severe lower back pain in October 1989 and was, at times, unable to move her left leg. After several medical examinations and tests, she was diagnosed as having a protrusion on the central portion of her fifth lumbar disc.
Applicants urge that Leckelt v. Eunice Superette, Inc., 555 So.2d 11 (La.App. 3d Cir.1989), writ denied, 559 So.2d 141 (La. 1990), supports their contention that, for the purposes of this action, respondent is not a member of the designated class of *1205 beneficiaries. Respondent, on the other hand, contends that Leckelt is factually not on point because the instant spouse's injuries, as well as the resultant loss of consortium, manifested themselves during marriage.
Leckelt`s loss of consortium claimant had lived for 14 years in open concubinage with the victim of the tortious act. The injuries resulting from the accident manifested themselves prior to the Leckelts' marriage, and therefore prior to the time when that plaintiff would have a cause of action for wrongful death. Because the injuries which caused the alleged loss of consortium were apparent before the marriage, there was no "loss" which could cause a compensable change in the consortium, service, and society enjoyed by the plaintiff during the marriage. By contrast, the alleged severe back pain and lumbar disc protrusion suffered by respondent's wife, and the alleged resultant loss of consortium, allegedly became manifest during the marriage and after respondent became a member of the designated class of beneficiaries. For these reasons, we distinguish Leckelt from the instant case.
The Louisiana Supreme Court has stated that an exception of no right of action will not lie to a suit for wrongful death instituted by a true surviving spouse, but would lie to the action of one who claimed to be, but in fact was not, the surviving spouse. Babineaux, supra at 334.
In deciding an exception of no right of action, the facts alleged in the petition are accepted as true. Bielkiewicz, supra. The petition alleges that the October 1989 severe pain and lumbar disc protrusion were caused by the January 1989 tortious act. When we assume that the injuries which manifested themselves in October 1989 were in fact caused by the January 1989 accident, respondent would have had a cause of action for wrongful death had his wife died from the October 1989 injuries. Under Babineaux, supra, as long as the claimant was legally the spouse of the deceased, an exception of no right of action would not be granted on the basis that the marriage occurred after the tortious act. Again assuming as fact the allegation of causation, if the result of this January 1989 tortious act had been death in October 1989, rather than a lumbar disc protrusion, respondent would have had a cause of action for wrongful death.
For the foregoing reasons, we conclude that, because he would have had a cause of action for wrongful death, respondent is a member of the designated class of persons who may recover damages for loss of consortium. Accordingly, we affirm the trial court ruling. Under the unique circumstance presented in this record, we hold that respondent has a right of action for loss of consortium.

The derivative nature of loss of consortium
Applicants have raised other issues which merit discussion. In brief, applicants argue that loss of consortium claims are derivative to the claim of the injured party. According to applicants, because the trial court properly and effectively dismissed Mrs. Aldredge's claim on the basis of res judicata, the loss of consortium claim of Mr. Aldredge should likewise be dissolved because his claim is derivative to the claim of Mrs. Aldredge.
The exception of no right of action cannot be invoked to determine whether a particular defendant can stand in judgment in a particular case, i.e., whether the right or remedy can be exercised against that defendant. Bohn v. Louisiana Farm Bureau Mutual Insurance Co., 482 So.2d 843 (La.App. 2d Cir.1986), writs denied 486 So.2d 750, 752 (La.1986); Babineaux, supra. In deciding the exception of no right of action, we do not determine whether respondent may assert his right of action against applicants.
In this case of first impression, our holding raises the following question for our consideration: even if respondent is among the class of designated beneficiaries, does the release, signed by his wife prior to marriage, extinguish his loss of consortium claim against the released applicants?

*1206 The Release

A transaction such as the instant release has, between the interested parties, a force equal to the authority of things adjudged. LSA-C.C. Arts. 3078 and 3071. However, a transaction made by one of the interested parties is not binding for the others. LSA-C.C. Art. 3077.
The Aldredges were married after the January 19, 1989 automobile accident and after execution of the "full complete and binding" release of applicants from any claim Mrs. Aldredge might have had as a result of that accident. Even if respondent had been married to Vicki Guidry Aldredge at the time of the tortious act, he would have had no loss of consortium claim until he suffered a loss due to her injuries. Coates v. Owens-Corning Fiberglas Corp., 444 So.2d 788 (La.App. 4th Cir.1984).
Applicant urges that, because of the derivative nature of the loss of consortium claim respondent's right of action was extinguished when the primary claim was released.
Respondent has a separate claim for his own injuries which was not extinguished by the release signed by his wife regarding her own injuries. In Albin v. State Farm Mutual Automobile Insurance Co., 498 So.2d 171 (La.App. 1st Cir.1986), writ denied, 498 So.2d 1088 (La.1986), Mr. Albin released State Farm and its insured from further liability for the single-injury policy limit. Mrs. Albin was not a party to the release and sought damages for loss of consortium. State Farm filed an exception of no right of action which was referred to the merits and dismissed after trial on the merits. The trial court found that Mrs. Albin's claim was separate from her husband's personal injury claim and found that payment of the single injury policy limit to Mr. Albin did not bar Mrs. Albin's recovery under the policy.
On appeal, the first circuit found no dispute that Mrs. Albin had a right of action against the tortfeasor for loss of consortium, service, and society. See Albin at 172. The first circuit also determined that Mrs. Albin had a right of action against the tortfeasor's insurer, within the terms and limits of the policy. Id.
Just as in Albin, the release signed by respondent's wife can not waive respondent's right of action, without his signature. The release also does not waive respondent's cause of action. See Nealy v. Fluor Drilling Services, Inc., 524 F.Supp. 789, 795 (W.D.La., 1981), affirmed 701 F.2d 441 (5 Cir.1983); see also, LSA-C.C. Art. 3077. The loss of consortium claim is personal to the claimant.
One may argue that, under facts such as those before us, the tortfeasor and/or his insurer should not be called upon to guard against actions by a future spouse or other unforeseeable claimant. However, the terms of a release could easily provide for unforeseen claims against the released parties. See Nealy, supra and as discussed in Annot., 29 A.L.R. 1200, 1201-1202 (1984). (Although a release could not waive the loss of consortium claimant's cause of action, without her signature, the terms of the release allowed the tortfeasor to receive indemnity, from the party signing the release, for the full amount of any judgment the claimant might receive.) Thus, under the instant facts, a determination that, the release does not bind respondent would not render insurers unable to plan for unforeseeable claims.
Louisiana jurisprudence on the derivative nature of the loss of consortium claim
The Albin court reversed the trial court's judgment because the evidence at trial failed to show that Mrs. Albin's loss of consortium was a "bodily injury" under the terms of the insurance policy. That policy provided that the insurer would pay damages which an insured (the tortfeasor) becomes legally liable to pay because of bodily injury to others. The court stated:
We hold that loss of consortium and society, especially in the absence of any physical manifestations or injuries resulting from such loss, is not a bodily injury within the meaning of this automobile liability insurance policy.
Albin at 174.
In Carroll v. State Farm Insurance Co., 519 So.2d 265 (La.App. 5th Cir.1988), writ *1207 denied, 520 So.2d 756 (La.1988), State Farm paid Mrs. Carroll the full policy limits for her injuries. Mr. Carroll alleged that he was covered under the policy as a second person sustaining bodily injury as a result of Mrs. Carroll's accident, because he aggravated a previous back injury when he was forced to take over her household duties. The trial court granted State Farm's motion for summary judgment and Mr. Carroll appealed. The fifth circuit affirmed the summary judgment and stated that, "[u]nder the facts of this case, the husband could have recovered only if he had elected higher limits of liability and uninsured motorist coverage." Carroll at 268.
In Shepard, supra, Gregory Shepard sustained permanent devastating brain damage in a vehicular collision. Gregory's parents, the Shepards, filed claims against multiple parties. All were settled or dismissed except those involving the uninsured motorist insurer, United Services Automobile Association (USSA). After trial, a jury awarded Gregory the $200,000 policy limit. The trial court awarded $100,000 plus interest to each of the Shepards for the loss of consortium claims. On appeal, USAA asserted that the Shepard's loss of consortium award was not a separate bodily injury claim and that the loss of consortium claimant cannot recover after the per person limits of the policy are exhausted.
After examining Albin and Carroll, the Shepard court reasoned as follows: A loss of consortium action is a derivative claim of the primary victim's injuries. The derivative claim does not come into existence until someone else is injured. Because the right of action in the loss of consortium claim is derived from the primary victim's injuries, recovery is restricted to the policy's per person limits. Therefore, if the injured party exhausts the per person limits, the derivative claim is extinguished. See Shepard at 629.
In Sharff v. The Ohio Casualty Insurance Co., 584 So.2d 1223, writ denied, (La. 1991), Travelers Insurance Company paid Mr. Sharff the per person limits for bodily injury and $2,500 for medical payments. Mrs. Sharff, mother of the primary victim, contended that her loss of consortium claim was a separate injury claim and should be covered by the policy's $100,000 aggregate limit per accident. This court chose to follow the emerging rule that, because the claim for loss of consortium is derivative of the primary injuries, the single per person limit covers both the primary claim and the claim for loss of consortium.
Sharff is not inconsistent with the "emerging" jurisprudence which it chose to follow. We agree that loss of consortium is derivative of the primary victim's injuries. We further agree, however with the suggestion of Albin and Nealy that the loss of consortium claim is not derivative of the primary victim's ability to assert a claim.
Neither Albin, Carroll, Shepard, nor Sharff held that the loss of consortium claim is derivative for any purpose other than insurance coverage and policy limits. Albin wrestled with the definition of "bodily injury", as applied to the loss of consortium claim. Carroll rejected Albin`s implicit preference for physical manifestation of injury to the loss of consortium claimant, and suggested that the loss of consortium claimant may recover if the policy limits had not been exhausted. Shepard specifically found that Louisiana established a cause of action for loss of consortium but that, because the loss of consortium action is derived from the injuries of the primary victim, the loss of consortium claimant has no further recourse against an insurer which has paid the per person policy limits.
Respondent, Mr. Aldredge has a right of action against applicants. Under Albin and Nealy, the instant release does not waive respondent's cause of action. While the instant policy is not before us for consideration, we note that Shepard, Carroll, and Sharff hold that, if the per person policy limits are not exhausted, a loss of consortium claimant may recover from the insurer up to the remainder of the policy limits.

*1208 CONCLUSION
For the foregoing reasons, we affirm the trial court's determination that the release was valid and therefore binding among the parties.
Due to the scope of the exception of no right of action, the sole issue presented by this writ application is as follows: whether respondent, James Aldredge, is among the class of beneficiaries who may assert a claim for loss of consortium where his wife's back injuries were caused by a pre-marriage tortious act but manifested themselves during the marriage. For the foregoing reasons, we find that respondent was among the designated class of beneficiaries at the time he allegedly sustained his loss of consortium injury for which he seeks damages. Accordingly, we affirm the trial court determination that respondent has a right of action.
At the costs of appellants-applicants, and in all respects, the trial court is affirmed.
AFFIRMED.