706 So.2d 1048 (1998)
Humberto MORALES
v.
DAVIS BROTHERS CONSTRUCTION COMPANY, INC., Ansel W. Brumfield, et al.
No. 97-C-1648.
Court of Appeal of Louisiana, Fourth Circuit.
January 28, 1998.
*1049 Kerry P. Cuccia, New Orleans, for Plaintiff.
C.G. Norwood, Jr., Eric A. Shuman, Darrel J. Papillion, McGlinchey Stafford, New Orleans, for Defendant.
Before LOBRANO, PLOTKIN and CIACCIO, JJ.
PLOTKIN, Judge.
This case presents a novel issue in this circuit; whether or not a spouse can recover loss of consortium damages for an injury that occurred prior to the marriage between the injured party and the spouse seeking damages. We hold that there can be no recovery for loss of consortium damages for a prenuptial injury that manifested itself before the marriage. The other issue raised by this case is whether or not a fiancé can recover damages for mental anguish even though she was not present at the accident scene, nor was she present when her prospective husband was initially brought to the hospital. On this issue, we hold that she cannot recover damages for mental anguish. We therefore reverse the judgment of the trial court denying defendant-Chrysler's motion for partial summary judgment and grant partial summary judgment in favor of defendant, dismissing Mrs. Morales' claims.

FACTS:
On July 7, 1988, plaintiff, Humberto Morales, a petty officer in the U.S. Coast Guard, was driving westbound on Interstate 10 in St. Tammany Parish in a 1986 Jeep CJ-7. He was towing a single-axle trailer and was en route to New Orleans to help his fianc é, Katrina Ratleef, now Mrs. Morales, move her belongings to Pensacola, Florida in preparation for their upcoming marriage. The trailer became loose on the bridge near the Louisiana-Mississippi border. Since there is no shoulder on the bridge, plaintiff sought to slowly continue crossing the bridge. As he switched lanes and proceeded to the right lane, a pick-up truck side-swiped the Jeep, causing the trailer to completely detach.
Mr. Morales was able to maintain control of the Jeep and continue moving to the right. At this point, the traffic behind the accident scene was able to safely stop and avoid making the collision worse. However, a fully-loaded tractor trailer tried to squeeze between the stopped cars. The tractor trailer slammed into the Jeep, causing the removable top portion of the CJ-7 to detach and sail over the side of the bridge. When the top of the Jeep detached, it severed the right hand of Mr. Morales, which also went over the side of the bridge.
Mr. Morales was transported to the hospital where treatment began for his injuries. Once at the hospital, his fiance, Katrina was summoned and told of his injuries. She arrived at the hospital shortly thereafter and was with Mr. Morales when he was notified that the police found his hand and were bringing it to the hospital. A decision was made to reattach the hand, thus, Mr. Morales was transported by ambulance to Southern Baptist Hospital where the hand could be surgically reattached. Katrina rode in the ambulance with Mr. Morales to Southern *1050 Baptist and stayed at the hospital throughout the surgery and recovery period.
After recovering from his injuries, Mr. Morales married Katrina on November 1, 1988. On June 28, 1989, the lawsuit on behalf of Mr. Morales was instituted against the driver of the tractor trailer, Davis Brothers Construction Company, Inc., Chrysler Corporation and the Louisiana Department of Transportation and Development. On July 6, 1989, the petition was amended to add Mrs. Morales as a plaintiff seeking damages for loss of consortium and mental anguish.
Defendant Chrylser Corporation sought a partial summary judgment to dismiss the claims of Mrs. Morales on January 14, 1997, which was denied on June 5, 1997. Defendant filed for supervisory writs in this court on July 30, 1997, and on August 20, 1997, we declined to exercise our jurisdiction. Defendant next proceeded to the Supreme Court seeking supervisory writs, and on November 26, 1997 it granted writs and remanded the case to this Court for briefing, argument and opinion.

ASSIGNMENT OF ERROR 1:
In its first assignment of error, defendant argues that the district court misapplied La. C.C.P. art. 966, pertaining to the standard for summary judgments as amended by the legislature through amendments in 1996 and 1997. According to the 1996 amendments, summary judgments are now "favored" and should be liberally applied. This is antithetical to the prior standard that summary judgments should be strictly applied. The new standard allows judges the opportunity to weed out meritless cases and free up time for worthy cases. Meunier v. Pizzo, et al, 97-0047 (La.App. 4th Cir. 6/18/97), 696 So.2d 610, writ denied, 97-1891 (La.10/31/97) 703 So.2d 27. The 1997 amendments establish and allocate the burden of proof. Act. 483, 1997 La. Legislature. The burden is on the moving party to present adequate documentation, i.e. pleadings, depositions, answers to interrogatories, admissions and affidavits, to resolve all material factual issues.
In any event, appellate courts must still review summary judgments de novo. Appellate courts must ask whether any genuine issues of material fact exist, and whether the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4th Cir. 9/11/96) 681 So.2d 19, writ denied, 96-2463 (La.12/6/96), 684 So.2d 934.
In this case, after a hearing on the motion for partial summary judgment, the trial court decided that it could not grant the motion because the defense had not presented enough factual information to make such a determination. After a de novo review, we find that there is enough evidence to make the determination. None of the facts are in dispute, thus only a legal question remains to be decided.

ASSIGNMENT OF ERROR 2:
Plaintiff argues that she is entitled to loss of consortium damages even though she was not married to Mr. Morales at the time of his car accident. Generally, to be entitled to loss of consortium damages, the petitioner must be a member of a specific class, for example, the spouse of the victim. La. C.C. art. 2315.2 Leckelt v. Eunice Superette, Inc., 555 So.2d 11 (La.App. 3rd Cir. 1989), writ denied, 559 So.2d 141 (La.1990); Nunez v. Canik, 576 So.2d 1080, (La.App. 3rd Cir.1991). La. C.C. art. 2315.2 lists the types of relationships that suffice. The article does not mention "fiancé." The basis of a loss of consortium claim is that one spouse has lost the companionship, support, society, etc. of the other spouse due to the negligent injury sustained by the other spouse, thus, there must be a marriage beforehand in order to find that a compensable change has taken place within the marital unit.
Mrs. Morales admits that she and Mr. Morales were not married at the time he suffered his injuries. But, she primarily relies upon Aldredge v. Whitney, 591 So.2d 1201 (La.App. 2d Cir.1991) which allowed a husband loss of consortium damages for an injury to his wife that occurred before the couple were married. The facts of that case dictated the result, and as such, they will be explained. Vicki Guidry Aldredge was involved *1051 in an automobile accident in January of 1989. She married James Aldredge in June of 1989. Subsequent to her marriage, Mrs. Aldredge developed serious back problems attributable to the earlier car accident. When Mr. Aldredge sued for loss of consortium, the defendant insurance company filed an exception of no right of action averring that Mr. Aldredge was not a member of the designated class of beneficiaries because he and the injured party were not married at the time of the car accident.
The defendant in that case argued that the loss of consortium action arose at the time that Mrs. Aldredge was involved in the car accident. That interpretation would have precluded Mr. Aldredge from recovering because he was not her spouse at that time. However, the court rejected the claim and found that because Mrs. Aldredge's injuries did not manifest themselves until after the marriage, Mr. Aldredge was entitled to loss of consortium damages. "[T]he alleged severe back pain and lumbar disc protrusion suffered by respondent's wife, and the alleged resultant loss of consortium, allegedly became manifest during the marriage and after respondent became a member of the designated class of beneficiaries." Id. at 1205. The court concluded by noting that the facts of that case were unique, thus evincing that this was a narrow exception to the established law.
Defendant relies on the established case law which denies loss of consortium damages for injuries sustained prior to marriage. Those cases hold that one cannot marry into a cause of action. See Leckelt v. Eunice Superette, Inc., 555 So.2d 11 (La.App. 3rd Cir.1989); Nunez v. Canik, 576 So.2d 1080, (La.App. 3rd Cir.1991); Herndon v. Southwestern Electric Power Company, 26,869 (La.App.2d Cir. 5/10/95) 655 So.2d 678. Herndon reasserted the traditional rule governing beneficiaries of loss of consortium claims in the Second Circuit and narrowed the already restricted holding of Aldredge. In that case, the spouse of the injured person sought to analogize her case with Aldredge. Before he married Mrs. Herndon, Mr. Herndon was injured when he was accidentally electrocuted. As a result of the electrocution, both of his hands were amputated, a piece of his skull was removed, both legs were severely injured, he suffered from severe pain, and he suffered from mental anguish. After the couple was married, Mr. Herndon's symptoms worsened and Mrs. Herndon sought compensation for her loss of consortium. However, the court held that she was not entitled to any damages for loss of consortium because "a reasonable spouse knew or should have known about the injured spouse's condition when she married him." Id., 655 So. 2d at 679.
We find that the facts of the instant case support a finding in harmony with Herndon. Here, Mrs. Morales was fully aware of the seriousness of Mr. Morales' injuries prior to marrying him. As the petition alleges, she was aware that Mr. Morales' hand was amputated, she was aware that it was going to be surgically reattached, and she was aware that he was suffering from severe pain and anxiety about his hand. The fact that his mental and physical anguish continued into the marriage does not suffice to allow a loss of consortium claim. From the serious nature of Mr. Morales' injuries, Mrs. Morales should have been aware of the foreseeable future problems that he would encounter. As tragic as this situation is, it is implausible to argue that she did not realize her husband would suffer further pain and mental anguish after being involved in a serious car accident where his hand was amputated.

ASSIGNMENT OF ERROR 3:
Next, Mrs. Morales claims that as a result of Mr. Morales' accident, she has suffered mental anguish. Specifically, the amended petition states that, "she has suffered keen mental anguish as she has witnessed, aided, consoled, and assisted Humberto Morales in the recovery from the injuries suffered by him in the accident of July 7, 1988." In Louisiana, one can recover mental anguish damages for the negligent injuries sustained by a third person. Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990). Since the Lejeune decision, the Louisiana legislature codified the rule enunciated by the court. However, the instant case arose before this code provision was promulgated. See *1052 La. C.C. art. 2315.6. Nevertheless, our courts have placed restrictions on who can recover and under what circumstances that person may recover. It is not feasible and equitable to hold a defendant liable to virtually every person who may agonize over the injuries suffered by another. Thus, the Lejeune court adopted four elements that must be present for an indirect victim to recover.
The first element is that the victim must "either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition." Lejeune, 556 So.2d at 570. Next, the direct victim of the injury must suffer harm to the extent that it is foreseeable that one in the position of the indirect victim would suffer mental anguish. Also, the mental anguish suffered by the indirect victim must be both severe and foreseeable. Lastly, the Lejeune court restricted recovery to the direct victim's close relatives, such as, spouses, children, parents and siblings. Id. at 570. The Lejeune court left any needed gap-filling to be decided at another time.
Hence, this Court has interpreted Lejeune and subsequent legislation. In Daigrepont v. Louisiana State Racing Commission, 95-0539 (La.App. 4th Cir. 10/26/95) 663 So.2d 840, writ denied, 95-2828 (La.2/2/96) 666 So.2d 1085, this Court did not allow a father to recover damages for mental anguish. In that case, Ronnie Daigrepont, a jockey, was injured during a horse race. His father arrived at the track shortly thereafter and learned of the accident. He then rushed to the hospital to be with his son. Subsequent to arriving at the hospital, he viewed a video of the accident. We found that he was too far removed from the scene of the accident, thus he did not witness the accident contemporaneously and he did not come upon the scene of the accident shortly after it occurred.
Even though the instant case arose before the adoption of La. C.C. art. 2315.6, the legislature adopted the same standard used by the Lejeune court for deciding if an indirect victim is close enough in time and place to "view the accident directly or come upon the scene shortly thereafter." Daigrepont, 663 So.2d at 841. With this in mind, we hold that Mrs. Morales did not meet this requirement. She was not at the scene of the accident and she did not happen upon it shortly thereafter. As in the Daigrepont case, she went to the hospital after she learned of Mr. Morales accident. At that point, he was not in substantially the same condition as when the accident occurred because it is safe to assume that his arm was bandaged by the time she arrived.
Also, the Lejeune court enumerated a potential list of who may recover for mental anguish due to negligent injury of a third person. It did not include fiancés, rather it included spouses. As already discussed, Mrs. Morales was not yet married to Mr. Morales at the time of the car accident. Counsel for Mrs. Morales argues that the list of potential beneficiaries was merely dicta in the Lejeune case and should not be interpreted as anything more. Regardless, the intent of the court in Lejeune is obvious; it did not want to create a vast cause of action open to all potential victims, but rather wanted to allow "close relatives" such as spouses, children and parents to recover if they were entitled. Lejeune, 556 So.2d at 570.
For the foregoing reasons, we reverse the decision of the trial court denying the defendant's motion for partial summary judgment and grant the partial summary judgment in favor of Chrysler. This case is remanded for further proceedings.
REVERSED AND RENDERED.